Philip ROMITI, Plaintiff,

v.

Otto KERNER, as Governor of the State of Illinois and Chairman of the State Electoral Board, Paul Powell, as Secretary of State of the State of Illinois and Secretary of the State Electoral Board, William G. Clark, as Attorney General of the State of Illinois and member of the State Electoral Board, William J. Scott, as Treasurer of the State of Illinois and member of the State Electoral Board, and Michael J. Howlett, as Auditor of Public Accounts of the State of Illinois and member of the State Electoral Board of Illinois, Defendants.

Civ. A. No. 65 C 2013.

United States District Court
N. D. Illinois, E. D.
June 30, 1966.

---

Peter Fitzpatrick, Chicago, Ill., for plaintiff, Philip Romiti.

William G. Clark, Atty. Gen. of Illinois, Chicago, Ill., for defendants Otto Kerner, William G. Clark and Michael J. Howlett.

Don H. Reuben and Lawrence Gunnels, Kirkland, Ellis, Hodson, Chaffetz & Masters, Chicago, Ill., for defendant William J. Scott.

Gilbert Feldman, Kleiman, Cornfield & Feldman, Chicago, Ill., for defendant Paul Powell.

Don H. Reuben and Lawrence Gunnels, Kirkland, Ellis, Hodson, Chaffetz & Masters, Chicago, Ill., for intervening defendant John W. Freels.

Wayland B. Cedarquist, Boodell, Sears, Foster, Sugrue & Crowley, Chicago, Ill., for Chicago Bar Ass'n, amicus curiae.

Henry L. Pitts, Chicago, Ill., for Illinois State Bar Ass'n, amicus curiae.

Before HASTINGS, Circuit Judge, and CAMPBELL and DECKER, District Judges.

HASTINGS, Circuit Judge.

Philip Romiti, a resident of Cook County, Illinois, which comprises the present first judicial district of Illinois, has brought suit as a taxpayer of Illinois and the United States and as a qualified voter in Cook County, Illinois against various officials of the State of Illinois in their public capacities. Jurisdiction is asserted under 42 U.S.C.A. § 1983 and § 1988 and 28 U.S.C.A. § 1343(3) [1].

The complaint was filed on December 1, 1965 in the United States District Court for the Northern District of Illinois. Named as defendants therein were Otto Kerner, as Governor of the State of Illinois and Chairman of the State Electoral Board; Paul Powell, as Secretary of the State of Illinois and Secretary of the State Electoral Board; William G. Clark, as Attorney General of the State of Illinois and member of the State Electoral Board; William J. Scott, as Treasurer of the State of Illinois and member of the State Electoral Board; and Michael J. Howlett, as Auditor of Public Accounts of the State of Illinois and member of the State Electoral Board of Illinois.

I. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S. C.A. § 1983.

\* \* \* \* \*

"The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this chapter and Title 18, for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty." 42 U.S.C.A. § 1988.

"To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States." 28 U.S.C.A. § 1343(3).

Plaintiff brought this action on his own behalf and on behalf of all other persons, citizens, taxpayers and voters similarly situated.

█ Since this suit seeks an interlocutory and permanent injunction to restrain the enforcement, operation and execution of Illinois regulations, statutes, and constitutional provisions, determination by a three-judge court is proper under 28 U.S.C.A. § 2281[2].

Relief is also sought pursuant to the Federal Declaratory Judgment Act, 28 U.S.C.A. § 2201–2202[3].

John W. Freels, as Director of the Administrative Office of the Illinois Courts, was granted leave to intervene herein as a party defendant, pursuant to Rule 24(b), Federal Rules of Civil Procedure, 28 U.S.C.A.

All defendants, with the exception of Paul Powell, have moved to dismiss the complaint. Plaintiff and defendant Powell opposed the motions to dismiss.

The Chicago Bar Association and the Illinois State Bar Association were granted leave to appear as *amici curiae* and filed briefs in support of the motions to dismiss the complaint.

Plaintiff moved for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A., supported by his affidavit.

There being no dispute about material facts and matters of which this court may take judicial notice, the issues of law raised by the motions to dismiss the complaint and plaintiff's motion for summary judgment were submitted to the court on the pleadings, respective motions of the parties, written briefs and oral argument.

The issues raised and the supporting background of this litigation will be more fully hereinafter set out.

Under the 1870 Illinois constitution, S.H.A., Illinois was divided into districts for the election of judges of the Supreme Court. Article VI, § 5 of the 1870 constitution provided:

"The boundaries of the districts may be changed at the session of the general assembly next preceding the election for judges therein, and at no other time; but whenever such alterations shall be made, the same shall be upon the rule of equality of population, as nearly as county bounds will allow, and the districts shall be composed of contiguous counties, in as nearly compact form as circumstances will permit. The alteration of the districts shall not affect the tenure of office of any judge."

Subsequently, in 1903, the Illinois legislature divided the state into seven supreme court districts. These districts, which remained unchanged until 1962, were, or soon became, malapportioned. The following map and supporting data,

---

2. "An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title." 28 U.S.C.A. § 2281.

3. "In a case of actual controversy within its jurisdiction, except with respect to Federal taxes, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

"Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." 28 U.S.C.A. §§ 2201–2202.

taken from plaintiff's complaint, show the geographical composition of the 1903 districts and the 1960 population figures and percentages for each of them.

*No.6.*
pop. 816,078
      8.1%

*No.5.*
pop.521,020
      5.2%

*No.4.*
pop.452,394
      4.5%

*No.7.*
pop.6,020,520
        59.7%

*No.3.*
pop.931,740
       9.2%

*No.2.*
pop.635,108
       6.3%

*No.1.*
pop. 704,298
         7%

Supreme Court District Apportionment

Showing Districts From Which Present
    Members of Court were Elected

1960 Population of State = 10,081,158
1/7 of Population.        1,440,165 - 14.3%

As shown by the foregoing map, the 1960 population figures for such seven supreme court districts were as follows:

| District Number | 1960 Population | Per Cent |
|---|---|---|
| 1 | 704,298 | 7.0 |
| 2 | 635,108 | 6.3 |
| 3 | 931,740 | 9.2 |
| 4 | 452,394 | 4.5 |
| 5 | 521,020 | 5.2 |
| 6 | 816,078 | 8.1 |
| 7 | 6,020,520 | 59.7 |
| Total | 10,081,158 | 100.0 |

The Illinois supreme court judges last elected from their respective districts under the foregoing seven district division, and their terms of office, are shown as follows:

| District | Judge | Year | Term |
|---|---|---|---|
| 1 | House | 1961 | 9 years |
| 2 | Hershey | 1961 | 9 years |
| 3 | Underwood | 1962 | 8 years [4] |
| 4 | Klingbiel | 1957 | 9 years |
| 5 | Daily | 1955 | 9 years [5] |
| 6 | Solfisburg | 1961 | 9 years |
| 7 | Schaefer | 1961 | 9 years |

In 1961, the Illinois legislature proposed, and in 1962 Illinois voters approved in a statewide referendum, a comprehensive amendment to Article VI of the Illinois constitution. We have set out relevant parts thereof in the Appendix to this opinion. We shall refer to this as the 1962 Judicial Article. Its effective date was January 1, 1964.

The final approval of the 1962 Judicial Article was the culmination of many years of education and effort. The movement was unrelentingly spearheaded by The Chicago Bar Association and the Illinois State Bar Association, *amici curiae* in this proceeding. The result has been a complete reorganization of entire judicial system in Illinois, with the establishment of an adequate system of administrative control. It has generally been hailed as a landmark achievement in needed judicial reform throughout the United States.[6]

Plaintiff concedes in his brief (page 8) that this "lawsuit will have no effect on judges in rank below the Supreme Court." He further agrees that the "24 Appellate Court judges in Illinois all ran for their offices anew after the Judicial Article was adopted, and, of course, are entitled to tenure." And, that the "Circuit Court judges also are entitled to the tenure provisions of the Judicial Article." Further, that there "was no defect in the way in which voters were permitted to participate in their election."

Plaintiff's complaint is addressed solely to the method of implementation of the provisions in the 1962 Judicial Article relating to the election of the judges of the Supreme Court.

Under this amendment, Illinois was divided into five judicial districts for the election of supreme and appellate court

4. Justice Underwood was elected to fill out the unexpired term of Justice Bristow, deceased.

5. Justice Daily died July 1, 1965 and the vacancy caused thereby has not yet been filled. He was confirmed in office in an election in 1964 in the new Third District.

6. Dean Albert J. Harno, the first Court Administrator in Illinois, in his 1963 report summarized the provisions of the 1962 Judicial Article as follows: "The amendment purports to cover * * * judicial structures and law administration. The main provisions * * * are (1) geographical divisions fixing venue. the election and number of judges and the administrative unit, (2) a new unified court system including an elected intermediate Appellate Court, (3) jurisdiction of the various courts, (4) rule-making power in the Supreme Court, (5) election, retention and other provisions concerning judicial personnel, (6) administrative power over all courts in the Supreme Court and over individual circuits in the chief judge of each circuit, (7) power given to the Supreme Court through the new commission to discipline judges and, if necessary, remove them from office, (8) a constitutional Judicial Conference, and (9) abolition of the old fee type justice of the peace and substitution of magistrates appointed by the circuit court." 1964 Annual Report to the Supreme Court of the Administrative Office of the Illinois Courts, page 5.

judges. The new districts are shown in the following map taken from the 1964 Annual Report of the Administrative Office of the Illinois Courts, page 6:

## JUDICIAL DISTRICTS

Population and percentage figures for the five new districts are as follows:

| District | Population | Per Cent of Total Population |
|---|---|---|
| 1 | 5,129,725 | 50.9 |
| 2 | 1,363,306 | 13.5 |
| 3 | 1,266,779 | 12.6 |
| 4 | 1,119,293 | 11.1 |
| 5 | 1,202,055 | 11.9 |

The first district, which has more than three times the population of any other district, is geographically coincident with Cook County. As is well known, Cook County contains the major city of Chicago and is a large manufacturing, commercial, financial, and cultural center of the Midwest and of the United States.

Instead of allotting one judge to each district, as did the old seven district system, the system under the 1962 amendment allots three judges to the first district and one judge each to the remaining four districts. Ultimately, it requires each judge to be a resident of the district from which he is elected.

If this apportionment were realized in fact, that is, if in the next general election (November 8, 1966) the first district elected three judges, who were residents of the district, while the remaining districts each elected one judge, plaintiff, on oral argument, concedes he would have no justiciable complaint.

The constitutional amendment and its attendant schedule, however, did not require the immediate realization of the new system. Schedule, paragraph 13 of the new Article VI provides:

"(a) Notwithstanding the provisions of Section 4 of this Article, elections on declarations of candidacy of judges of the Supreme Court in office on the Effective Date shall be held in the Judicial Districts established under Section 3 as follows:

"(i) For incumbents from the former First and Second Supreme Court Districts, in the Fifth Judicial District;

"(ii) For incumbent from the former Third Supreme Court District, in the Fourth Judicial District;

"(iii) For incumbents from the former Fourth and Fifth Supreme Court Districts, in the Third Judicial District;

"(iv) For incumbent from the former Sixth Supreme Court District, in the Second Judicial District;

"(v) For incumbent from the former Seventh Supreme Court District, in the First Judicial District."

"(b) The first vacancy in the office of judge of the Supreme Court which occurs in the former First and Second Supreme Court Districts, and the first vacancy which occurs in the former Fourth and Fifth Supreme Court Districts, and the vacancy which occurs in the former Seventh Supreme Court District shall be filled by the selection of residents of the First Judicial District created under Section 3 of this Article."

The practical effect of Schedule, Paragraph 13(a) is to create an interim election procedure whereby incumbents from the former districts stand for election in new districts as above set out. Only one incumbent is required to stand for an approval or confirming election in the first district, whereas three judges are assigned to the first district.

Following the interim election procedure of 13(a), 13(b) provides, in effect, that the remaining two judicial seats for the first district be filled by an election of first district voters when vacancies occur in either of the former first or second districts and in either of the former fourth or fifth districts.

At present, the first district has only one judge, and he is not a resident of the

district.[7] The district, if equally apportioned, would have at least three judges.

Because of the recent death of a judge for the former fifth district, (Justice Daily, who died July 1, 1965) 13(b) operates to require the vacancy on the Illinois Supreme Court caused by his death to be filled by election by voters of the new first district. The new judge to be elected must be a resident of the new *first* district.

The situation with respect to the second first district judicial seat requires a digression, for the facts upon which this suit is based have changed since the suit was brought and orally argued.

■ A motion to dismiss generally takes as admitted all well pleaded facts of a complaint. Grand Opera Co. v. Twentieth Century-Fox Film Corp., 7 Cir., 235 F.2d 303 (1956). However, a court should not be required to accept as true, facts alleged in a complaint which are contrary to facts of which the court will take judicial notice. Golaris v. Jewel Tea Co., D.C.Ill., 22 F.R.D. 16, 19 (N.D., 1958) and cases cited there. Courts have taken judicial notice of officers, official positions and authority, Booth v. Fletcher, 69 App.D.C. 351, 101 F.2d 676 (1938), cert. den., 307 U.S. 628, 59 S.Ct. 835, 83 L.Ed. 1511 (1939); Springfield v. Carter, 8 Cir., 175 F.2d 914 (1949); and specifically of the fact that certain

state officers no longer hold office. Wells v. Hand, 238 F.Supp. 779 (M.D.Ga., 1965).

■ We, therefore, take judicial notice that after this suit was brought, Justice Hershey, of the present fifth district of the Illinois Supreme Court, on June 9, 1966 resigned from the court, effective November 6, 1966, two days before the coming November election. Under Schedule, paragraph 13(b), supra, this means that in the November 8, 1966 election, the first district electorate will elect two residents as judges of the Illinois Supreme Court. As above pointed out, they will fill the vacancies created by the death of Justice Daily and the resignation of Justice Hershey.

In November, then, the first district will elect two judges. The third judge who is allotted to the first district is not yet required to be a resident of the first district. The incumbency provision of § 11[8] of the new judicial article allows judges previously elected to file declarations of candidacy to succeed themselves and allows submission of such judges' names to the voters, on a special ballot without party designation, on the sole question of whether the judge shall be retained in office for another term. Since the term of office of the incumbent judge who must stand for confirming election in the first district does not expire until

---

7. In fact, the new first district is now represented by Justice Schaefer, a resident of Lake Bluff, Illinois, located in Lake County adjoining Cook County on the north. He was elected in the old seventh district by the voters of Lake, Cook, Du Page, Will and Kankakee Counties in 1961 for a term of nine years. Under the 1962 Judicial Article, if he elects to do so, Justice Schaefer will stand for an approval or confirming election by the voters in the new first district.

8. "Not less than six months prior to the general election next preceding the expiration of his term of office, any judge previously elected may file in the office of the Secretary of State a declaration of candidacy to succeed himself, and the Secretary of State, not less than 61 days prior to the election, shall certify such candidacy to the proper election officials.

At the election the name of each judge who has filed such a declaration shall be submitted to the voters, on a special judicial ballot without party designation, on the sole question whether he shall be retained in office for another term. The elections shall be conducted in the appropriate judicial districts, circuits, counties and units. The affirmative votes of a majority of the voters voting on the question shall elect him to the office for another term commencing the first Monday in December following the election. Any judge who does not file a declaration within the time herein specified, or, having filed, fails of reelection, shall vacate his office at the expiration of his term, whether or not his successor, who shall be selected for a full term pursuant to Section 10 of this Article, shall yet have qualified."

1970, the first district will have, after the November election, only two judges who have been elected *solely* by voters of the first district.[9]

The incumbent judge in question served the old seventh district, which comprised Lake, Cook, Du Page, Will and Kankakee counties. This means that the residents of the present first district (Cook County) had an opportunity to vote for their incumbent judge in his last election, although the total vote was shared with a smaller electorate now placed in other districts.

Plaintiff alleges that this state of affairs dilutes his right to vote; that Article VI, Schedule, paragraph 13 contains arbitrary and discriminatory provisions for retention in office of the current supreme court judges in the five new judicial districts; and contains provisions which arbitrarily deny the rights of voters by unreasonably putting off the time when residents of the new first district will be able to vote for supreme court judges from that district.

Specifically, he claims that prior to the adoption of the new judicial article, the Illinois supreme court districts were malapportioned; that the present supreme court judges were elected from the malapportioned districts; that under the new judicial article, the new districts will be malapportioned until such time as Schedule 13(b) is fully implemented; and that in addition to the malapportionment, until 13(b) is fully implemented, the first district will not have judges who are all residents of the district. The injury which plaintiff alleges this state of affairs causes him is the denial of his right to a free and equal vote. In short, he concedes that the new districting system is fair, but he argues that the vice in it is its failure to be implemented immediately.

While we do not wish to define the nature of all constitutions nor the meaning of constitutional amendments, a constitutional amendment is generally considered to be a more fundamental form of establishing law than legislation. Amendments may often alter the explicit framework upon which a government and legal order are based, more fundamentally than ordinary legislation; and they generally require the direct, in addition to the representative, approval of the electorate.

Most significant for present purposes is the fact that constitutional change is perceived by citizens to be a more serious order of change than that generally produced by legislation. It is to be presumed that the seriousness of fundamental institutional change often involved in constitutional amendments is known to the electorate and that voters in general realize the unusual significance of a vote cast for or against adoption of an amendment.

The Illinois constitutional amendment under consideration created far-reaching changes in the judicial system of Illinois. While there can be no doubt that a similar amendment could have been framed which would have provided for an immediate replacement or election of all Illinois judges, the present amendment did not do so. Instead, the amendment which was adopted offered a system change in which the sitting supreme court judges would be retained in office.

The amendment specifically provided the authority by which the present supreme court judges continue to hold office:

"Each supreme court judge * * * in office on the Effective Date of this Article, shall continue to hold office

---

9. Making allowance for vacancies created by the death of Justice Daily and the resignation of Justice Hershey, at the time of the November 8, 1966 election, the composition of the Illinois Supreme Court will be as follows:

| 1st District | Justice Schaefer |
| 1st District | Vacancy to be filled |
| 1st District | Vacancy to be filled |
| 2nd District | Justice Solfisburg |
| 3rd District | Justice Klingbiel |
| 4th District | Justice Underwood |
| 5th District | Justice House |

All of the foregoing members of the court, except Justice Schaefer, are residents of their respective districts.

until the expiration of his term, as follows:

(a) Judges of the Supreme Court shall continue as judges of said court.

\* \* \* \* \* \*

(f) The provisions of this Article governing eligibility for office shall not affect the right of any incumbent to continue in office for the remainder of his existing term pursuant to the provisions of this paragraph." Article VI, Schedule, Paragraph 4.

"(a) Those elected judges in office on January 1, 1963 shall be entitled to seek retention in office under Section 11 of this Article.

"(b) The terms of all judges in office on January 1, 1963 expiring otherwise than on the first Monday in December in an even numbered year are extended to the first Monday in December after the general election following the date at which such terms would otherwise expire. \* \* \*" Article VI, Schedule, Paragraph 12.

These few quoted provisions and the general nature of the amendment make clear to us that the adoption of the 1962 Judicial Article, which, it must be remembered, required a positive majority vote of the electorate in addition to passage by the legislature, did more than merely change the constituencies of the supreme court judges.

The method selected in changing to a new system of judicial selection, organization, and administration in part involved the confirmation in office, by *a state-wide vote* in which all entitled residents could vote equally, of those elected judges in office on January 1, 1963.

We *do not assert that such* confirmation in office amounted to an at-large election, but we do note that there may be many proper systems of selecting or retaining judges and that it does not,

*ipso facto,* offend imagination or create a legal disturbance to retain judges in office by means of a constitutional amendment. The vote of the Illinois electorate which adopted the new judicial article has, therefore, some meaning as a vote in confirming the Illinois supreme court judges in office.

■ The significance of the amendment, as it operated in fact and not as it could possibly have operated, is that it terminated the old malapportioned system of judicial selection and confirmed in office, by means of a vote of the general electorate, judges elected under the malapportioned system. The complaint, *as it now stands,* charges that there is vote dilution because one non-resident first district judge was elected under a malapportioned system and will continue in office until 1970, and will thereafter have the right to run unopposed on his record. As noted above, first district-Cook County residents, in combination with residents of four other counties, had the opportunity to vote for this judge under the old system of judicial election.[10] In such a fact situation, we are unable to find a vote dilution which has survived the adoption and operation of the 1962 Illinois Judicial Article, or which has retained any legal significance.

We do not consider the vote of the Illinois electorate an attempt to validate and preserve a scheme of malapportionment. If there existed behind the election and incumbency provisions of the 1962 Judicial Article hidden political hopes to profit in some way from a continuing, but subtle malapportionment, then death and resignation have frustrated them, and they are of no concern to us. We recognize that Lucas v. Forty-Fourth General Assembly of Colorado, 377 U.S. 713, 84 S.Ct. 1459, 12 L.Ed.2d 632 (1964) forbids *legislative* malapportionment, even when adopted in a con-

10. Under the 1960 census, the population of the counties comprising the old seventh district was as follows: Cook County, 5,129,725; Du Page County, 313,459; Lake County, 293,656; Will County, 191,617; Kankakee County, 92,063. The population of Cook County alone comprised approximately 85% of the population of the entire seventh district.

stitutional amendment by the voters of a state, but, as the changing facts have shown here, the Illinois amendment has not had the effect of indefinitely postponing a full equality of voting rights for voters of the new first district.

We are left with the complaint that one judge who serves the first district and who will have the advantage of incumbency in future first district elections is not a resident of the district.

Plaintiff argues that interests peculiar to the first district require that judges of the first district be intimately acquainted with it and its problems. The retention in office of the first district judge is claimed to dilute and debase the voting rights of first district voters.

■ The extent of a state's law-making power under the equal protection clause is large. The late Mr. Justice Frankfurter, referring to the power of state legislatures, has said:

> "The Constitution is satisfied if a legislature responds to the practical living facts with which it deals. Through what precise points in a field of many competing pressures a legislature might most suitably have drawn its lines is not a question for judicial re-examination. It is enough to satisfy the Constitution that in drawing them the principle of reason has not been disregarded. See Goesaert v. Cleary, 335 U.S. 464 [69 S.Ct. 198, 93 L.Ed. 163]. And what degree of uniformity reason demands of a statute is, of course, a function of the complexity of the needs which the statute seeks to accommodate." McGowan v. State of Maryland, 366 U.S. 420, 524, 81 S.Ct. 1101, 1188, 6 L.Ed.2d 393 (1961) (concurring opinion).

We see nothing unreasonable or arbitrary, nor a dilution of voting rights, in a state constitutional amendment which authorizes a sitting judge of the state supreme court to serve in a district where he is not a resident. It is certainly reasonable to continue in an office in which experience is prized a judge experienced in the office. It is rational to provide continuing judicial experience and to promote independence of the judiciary through security of tenure by furnishing incumbent judges a right to run unopposed on their records in confirming elections. It is not unwarranted for a state to assume that its supreme court judges, notwithstanding their places of residence, have sufficient good will, industry and intelligence to become familiar with whatever legal problems they shall have to face.

Even if, as plaintiff contends, equal protection would require a judge to be in some sense "representative" of the district he serves, there has been no effort to show, nor do we think it could be shown, that residency alone is necessary to confer the knowledge and qualities desired in a "representative".

It may be noted here that, although plaintiff's objection to the incumbency provisions of the new judicial article is tied solely to the issue of one non-resident judge, plaintiff himself does not find the incumbency provisions unreasonable generally.

Respecting incumbency, there is far more constitutional significance in the fact that the incumbent judge must stand for re-election in the district which he serves than in his residency, the source of his candidacy, or the ultimate origin of his incumbency. Although the incumbent must face an election in 1970, which is in the nature of a confirmation in office rather than a thoroughly contested election, the fact is not changed that he must face the criticism of an electorate and may possibly, notwithstanding the great advantage of incumbency, not be returned to office. The nature of the election the incumbent must face, which is but the advantage given his incumbency, has not been shown to injure plaintiff's voting rights.

■ Since there has been no showing that allowing an Illinois supreme court judge to stand for election in a district in which he is not a resident is discriminatory, arbitrary, unreasonable, or, in-

deed, injurious, we find no equal protection problems raised by it.

If there could somehow remain any vote inequities under the 1962 Judicial Article, they would not exist because of the effort of Illinois to circumvent federally protected rights. They would exist as the incidental effect of the attempt of the voters and legislature of the entire state to improve their judicial system through a comprehensive revision. That revision included provisions designed at least in part to insure continuity of experience on the state supreme court and to promote a highly-valued independence of the supreme court judicially from political pressures, while yet requiring the supreme court judges to be answerable to the electorate.

■ In awarding or withholding relief,

"a court is entitled to and should consider the proximity of a forthcoming election and the mechanics and complexities of state election laws, and should act and rely upon general equitable principles. With respect to the timing of relief, a court can reasonably endeavor to avoid a disruption of the election process which might result from requiring precipitate changes that could make unreasonable or embarrassing demands on a State in adjusting to the requirements of the court's decree." Reynolds v. Sims, 377 U.S. 533, 585, 84 S.Ct. 1362, 1394, 12 L.Ed.2d 506 (1964).

The remedy which would take care of the assumed injury would be merely to require one judge to run in the coming November, 1966 election instead of in 1970. If we assume that plaintiff's injury in some way survived the change in Illinois law, it is nonetheless not significant enough to justify the acceleration of operation of an otherwise unchallengeable state voting and election procedure.

There is no Federal Constitutional issue in the question of residency or incumbency in the context of this case, and the operation of the 1962 Judicial Article is itself an adequate remedy to plaintiff's assumed injury.

The parties have urged upon us that we decide whether the denial of an equal right to vote for any office, so long as the state requires the office to be filled by election, violates the fundamental right to vote fairly and equally. We have been asked to determine whether the reapportionment cases, Germano v. Kerner, 378 U.S. 560, 84 S.Ct. 1908, 12 L.Ed.2d 1034 (1964); Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); Wesberry v. Sanders, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964), and others, are concerned essentially with legislative reapportionment or whether they are cases which, together with Gray v. Sanders, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963), require that in a statewide election of any sort, every vote must be weighted equally. As a corollary question, we have also been asked to decide whether the judicial office and function is so different from the legislative office and function that reapportionment requirements are not applicable to an elected judiciary.

■ We have little doubt that, in a proper case, there is a valid distinction between applying the "one man, one vote" rule in a legislative reapportionment case to the election of a state supreme court judiciary as provided in the 1962 Judicial Article. Under the facts of this case, as they now exist, we do not reach or decide that interesting question.

This memorandum opinion shall stand as the findings of fact and conclusions of law of this court under Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A.

For the foregoing reasons, the motions to dismiss plaintiff's complaint will be granted and plaintiff's motion for summary judgment will be denied. An appropriate judgment will be entered herein.

## APPENDIX

### 1962 ILLINOIS JUDICIAL ARTICLE

*The amendment of Article VI adopted in 1962 was proposed by House Joint Resolution No. 39 of the Seventy-second General Assembly (Laws 1961, p. 3917).*

*For text of Article VI effective until January 1, 1964, see Ill.Rev.Stat. 1961.*

§ 1. The judicial power is vested in a Supreme Court, an Appellate Court and Circuit Courts.

§ 2. General administrative authority over all courts in this State including the temporary assignment of any judge to a court other than that for which he was selected with the consent of the Chief Judge of the Circuit to which such assignment is made, is vested in the Supreme Court and shall be exercised by the Chief Justice in accordance with its rules. The Supreme Court shall appoint an administrative director and staff, who shall serve at its pleasure, to assist the Chief Justice in his administrative duties.

§ 3. The state is divided into five Judicial Districts for the selection of judges of the Supreme and Appellate Courts. The First Judicial District consists of the county of Cook. The remainder of the State shall be divided by law into four Judicial Districts of substantially equal population, each of which shall be compact and composed of contiguous counties.

### SUPREME COURT

§ 4. The Supreme Court shall consist of seven judges, three of whom shall be selected from the First Judicial District and one each from the Second, Third, Fourth and Fifth Judicial Districts. Four judges shall constitute a quorum and the concurrence of four shall be necessary to a decision. The judges of the Supreme Court shall select one of their number to serve as Chief Justice for a term of three years.

§ 5. The Supreme Court may exercise original jurisdiction in cases relating to the revenue, mandamus, prohibition and habeas corpus, such original jurisdiction as may be necessary to the complete determination of any cause on review, and only appellate jurisdiction in all other cases.

Appeals from the final judgments of circuit courts shall lie directly to the Supreme Court as a matter of right only (a) in cases involving revenue, (b) in cases involving a question arising under the Constitution of the United States or of this State, (c) in cases of habeas corpus, and (d) by the defendant from sentence in capital cases. Subject to law hereafter enacted, the Supreme Court has authority to provide by rule for appeal in other cases from the circuit courts directly to the Supreme Court.

Appeals from the Appellate Court shall lie to the Supreme Court as a matter of right only (a) in cases in which a question under the Constitution of the United States or of this State arises for the first time in and as a result of the action of the Appellate Court, and (b) upon the certification by a division of the Appellate Court that a case decided by it involves a question of such importance that it should be decided by the Supreme Court. Subject to rules, appeals from the Appellate Court to the Supreme Court in all other cases shall be by leave of the Supreme Court.

### APPELLATE COURT

§ 6. The Appellate Court shall be organized in the five Judicial Districts. Until otherwise provided by law, the court shall consist of twenty-four judges, twelve of whom shall be selected from the First Judicial District and three each from the Second, Third, Fourth and Fifth Judicial Districts. The Supreme Court shall have authority to assign additional judges to service in the Appellate Court from time to time as the business of the Court requires. There shall be such number of divisions, of not less than three judges each, as the Supreme Court shall prescribe. Assignments to divisions shall be made by the Supreme Court and a judge may be assigned to a division in a district other

than the district in which such judge resides with the consent of a majority of the judges of the district to which such assignment is made. The majority of a division shall constitute a quorum and the concurrence of a majority of the division shall be necessary to a decision of the Appellate Court. There shall be at least one division in each Appellate District and each division shall sit at times and places prescribed by rules of the Supreme Court.

§ 7. In all cases, other than those appealable directly to the Supreme Court, appeals from final judgments of a Circuit Court lie as a matter of right to the Appellate Court in the district in which the Circuit Court is located, except that after a trial on the merits in a criminal case, no appeal shall lie from a judgment of acquittal. The Supreme Court shall provide by rule for expeditious and inexpensive appeals. The Appellate Court may exercise such original jurisdiction as may be necessary to the complete determination of any cause on review. The Supreme Court may provide by rule for appeals to the Appellate Court from other than final judgments of the Circuit Court. The Appellate Court shall have such powers of direct review of administrative action as may be provided by law.

## CIRCUIT COURTS

§ 8. The State shall be divided into judicial circuits each consisting of one or more counties. The county of Cook shall constitute a judicial circuit and the judicial circuits within the Second, Third, Fourth and Fifth Appellate Districts, respectively, shall be as established from time to time by law. Any judicial circuit composed of more than one county shall be compact and of contiguous counties.

There shall be one circuit court for each judicial circuit which shall have such number of circuit and associate judges and magistrates as may be prescribed by law; provided, that there shall be at least twelve associate judges elected from the area in Cook County out-

side the City of Chicago and at least thirty-six associate judges from the City of Chicago. In Cook County, the City of Chicago and the area outside the City of Chicago shall be separate units for the election or selection of associate judges. All associate judges from said area outside the City of Chicago shall run at large from said area, such area apportionment of associate judges shall continue until changed by law. There shall be at least one associate judge from each county. There shall be no masters in chancery or other fee officers in the judicial system.

The circuit judges and associate judges in each circuit shall select one of the circuit judges to serve at their pleasure as Chief Judge of such circuit. Subject to the authority of the Supreme Court, the Chief Judge shall have general administrative authority in the court, including authority to provide for divisions, general or specialized, and for appropriate times and places of holding court. The General Assembly shall limit or define the matters to be assigned to magistrates.

§ 9. The Circuit Court shall have unlimited original jurisdiction of all justiciable matters, and such powers of review of administrative action as may be provided by law.

## SELECTION AND TENURE

§ 10. All of the judges provided for herein shall be nominated by party convention or primary and elected at general elections by the electors in the respective judicial districts, judicial circuits, counties, or units. Provided, however, the General Assembly may provide by law for the selection and tenure of all judges provided herein as distinguished from nomination and election by the electors, but no law establishing a method of selecting judges and providing their tenure shall be adopted or amended except by a vote of two-thirds of the members elected to each House, nor shall any method of selecting judges and providing their tenure become law until the question of the method of selection be first

submitted to the electors at the next general election. If a majority of those voting upon the question shall favor the method of selection or tenure as submitted it shall then become law.

The office of any judge shall be deemed vacant upon his death, resignation, rejection, removal or retirement. Whenever a vacancy occurs in the office of judge, the vacancy shall be filled for the unexpired portion of the term by the voters at an election as above provided in this Section, or in such other manner as the General Assembly may provide by law as set out in this Section and approved by the electors. Whenever an additional judge is authorized by law, the office shall be filled in the same manner as in the case of a vacancy.

§ 11. Not less than six months prior to the general election next preceding the expiration of his term of office, any judge previously elected may file in the office of the Secretary of State a declaration of candidacy to succeed himself, and the Secretary of State, not less than 61 days prior to the election, shall certify such candidacy to the proper election officials. At the election the name of each judge who has filed such a declaration shall be submitted to the voters, on a special judicial ballot without party designation, on the sole question whether he shall be retained in office for another term. The elections shall be conducted in the appropriate judicial districts, circuits, counties and units. The affirmative votes of a majority of the voters voting on the question shall elect him to the office for another term commencing the first Monday in December following the election. Any judge who does not file a declaration within the time herein specified, or, having filed, fails of reelection, shall vacate his office at the expiration of his term, whether or not his successor, who shall be selected for a full term pursuant to Section 10 of this Article, shall yet have qualified.

Any law reducing the number of judges of the Appellate Court in any District or the number of circuit or associate judges in any circuit shall be without prejudice to the right of judges in office at the time of its enactment to seek retention in office as hereinabove provided.

§ 12. Subject to law, the circuit judges in each circuit shall appoint magistrates to serve at their pleasure; Provided, that in Cook County, until and unless changed by law, at least one-fourth of the magistrates shall be appointed from and reside in the area outside the corporate limits of the City of Chicago.

§ 13. As used in this Article, the term "general election" means the biennial election at which members of the General Assembly are elected.

§ 14. The term of office of judges of the Supreme Court and of the Appellate Court shall be ten years and of the circuit judges and associate judges of the Circuit Courts six years.

§ 15. No person shall be eligible for the office of judge unless he shall be a citizen and licensed attorney-at-law of this State, and a resident of the judicial district, circuit, county or unit from which selected. However, any change made in the area of a district or circuit or the reapportionment of districts or circuits shall not affect the tenure in office of any judge incumbent at the time such change or reapportionment is made.

### GENERAL

§ 16. Judges shall devote full time to their judicial duties, shall not engage in the practice of law or hold any other office or position of profit under the United States or this State or any municipal corporation or political subdivision of this State, and shall not hold office in any political party. Compensation for service in the State Militia or the armed forces of the United States for such periods of time as may be determined by rule of the Supreme Court shall not be deemed "profit."

§ 17. Judges and magistrates shall receive for their services salaries provided by law. The salaries of judges shall not be diminished during their respective terms of office. Judicial of-

ficers may be paid such actual and necessary expenses as may be provided by law. All salaries and expenses shall be paid by the State, except that judges of the Appellate Court for the First District and circuit and associate judges and magistrates of the Circuit Court of Cook County shall receive such additional compensation from the county as may be provided by law.

§ 18. Notwithstanding the provisions of this Article relating to terms of office, the General Assembly may provide by law for the retirement of judges automatically at a prescribed age; and, subject to rules of procedure to be established by the Supreme Court and after notice and hearing, any judge may be retired for disability or suspended without pay or removed for cause by a commission composed of one judge of the Supreme Court selected by that court, two judges of the Appellate Court selected by that court, and two circuit judges selected by the Supreme Court. Such commission shall be convened by the Chief Justice upon order of the Supreme Court or at the request of the Senate.

Any retired judge may, with his consent, be assigned by the Supreme Court to judicial service, and while so serving shall receive the compensation applicable to such service in lieu of retirement benefits, if any.

§ 19. The Supreme Court shall provide by rule for and shall convene an annual judicial conference to consider the business of the several courts and to suggest improvements in the administration of justice, and shall report thereon in writing to the General Assembly not later than January thirty-first in each legislative year.

§ 20. The General Assembly shall provide by law for the selection by the judges or election, terms of office, removal for cause and salaries of clerks and other non-judicial officers of the various courts; provided that a clerk shall be selected or elected for each Appellate Court District.

STATE'S ATTORNEYS

§ 21. There shall be a state's attorney elected in each county in the year 1964 and every fourth year thereafter for a term of four years. No person shall be eligible for such office unless a citizen and licensed attorney-at-law of this State. His salary shall be prescribed by law.

SCHEDULE

Paragraph 1. This Article and Schedule, with the exception of Schedule provisions expressly authorizing or directing earlier action, shall become effective on January 1, 1964, hereinafter called the "Effective Date." After the adoption of this Article the General Assembly shall enact such laws and make such appropriations and the Supreme Court shall make such rules as may be necessary or proper to give effect to its provisions.

Paragraph 2. Except to the extent inconsistent with the provisions of this Article, all provisions of law and rules of court in force on the Effective Date of this Article shall continue in effect until superseded in a manner authorized by the Constitution.

Paragraph 3. Until changed by law,

(a) The Second Judicial District consists of the Counties of Jo Daviess, Stephenson, Carroll, Ogle, Lee, Winnebago, Boone, McHenry, Lake, DeKalb, Kane, Kendall, and DuPage; the Third Judicial District consists of the Counties of Mercer, Rock Island, Whiteside, Henry, Bureau, LaSalle, Grundy, Stark, Putnam, Marshall, Peoria, Tazewell, Will, Kankakee, Iroquois, Henderson, Warren, Knox, Fulton, McDonough and Hancock; the Fourth Judicial District consists of the Counties of Adams, Pike, Calhoun, Schuyler, Brown, Cass, Mason, Menard, Morgan, Scott, Green, Jersey, Macoupin, Sangamon, Logan, McLean, Woodford, Livingston, Ford, DeWitt, Macon, Piatt, Moultrie, Champaign, Douglas, Vermilion, Edgar, Coles, Cumberland, and Clark; and the Fifth Judicial District consists of all the counties south of the Fourth District; and

(b) the existing judicial circuits shall be continued.

Paragraph 4. Each supreme court judge, circuit judge, superior court judge, county judge, probate judge, judge of any city, village or incorporated town court, chief justice and judge of any municipal court, justice of the peace and police magistrate, in office on the Effective Date of this Article, shall continue to hold office until the expiration of his term, as follows:

(a) Judges of the Supreme Court shall continue as judges of said court.

(b) Circuit judges shall continue as circuit judges of the several circuit courts.

(c) In Cook County, the judges of the Superior Court, the Probate Court, the County Court, and the Chief Justice of the Municipal Court of Chicago shall be circuit judges; the judges of the Municipal Court of Chicago, and the judges of the several municipal, city, village and incorporated town courts shall be associate judges of the Circuit Court.

(d) In counties other than the county of Cook, the county judges, probate judges, and the judges of municipal, city, village and incorporated town courts shall be associate judges of the Circuit Court.

(e) Police magistrates and justices of the peace shall be magistrates of the several circuit courts, and unless otherwise provided by law shall continue to perform their non-judicial functions for the remainder of their respective terms.

(f) The provisions of this Article governing eligibility for office shall not affect the right of any incumbent to continue in office for the remainder of his existing term pursuant to the provisions of this paragraph. For the remainder of such existing term, the provisions of this Article concerning prohibited activities shall not apply to a judge of a county, probate, city, village or incorporated town court, a justice of the peace or police magistrate.

Paragraph 5. On the Effective Date of this Article,

(a) All justice of the peace courts, police magistrate courts, city, village and incorporated town courts, municipal courts, county courts, probate courts, the Superior Court of Cook County, the Criminal Court of Cook County and the Municipal Court of Chicago are abolished and all their jurisdiction, judicial functions, powers and duties are transferred to the respective circuit courts, and until otherwise provided by law non-judicial functions vested by law in county courts or the judges thereof are transferred to the circuit courts;

(b) All the jurisdiction, functions, powers and duties of the several appellate courts shall be transferred to the Appellate Court provided for in this Article, in the appropriate district.

(c) Each court into which jurisdiction of other courts is transferred shall succeed to and assume jurisdiction of all causes, matters and proceedings then pending, with full power and authority to dispose of them and to carry into execution or otherwise to give effect to all orders, judgments and decrees theretofore entered by the predecessor courts.

(d) The files, books, papers, records, documents, moneys, securities, and other property in the possession, custody or under the control of the courts hereby abolished, or any officer thereof, are transferred to the Circuit Court; and thereafter all proceedings in all courts shall be matters of record.

Paragraph 6. Each clerk of court in office on the Effective Date of this Article shall continue to hold office, until the expiration of his existing term as follows:

(a) The clerk of the Supreme Court shall continue in such office.

(b) The clerks of the several appellate courts shall continue as clerks of the Appellate Court and shall perform such services as may be prescribed by order of the Supreme Court.

(c) In Cook County, the Circuit Court shall by rule designate one of the clerks as clerk and the others as associate clerks

to perform such services as may be prescribed by rule of the Circuit Court.

(d) In judicial circuits outside Cook County, the clerks of the circuit courts in their respective counties shall continue in said offices, and the clerks of the other courts of record shall be associate clerks of the circuit court in their respective counties, shall perform such services as may be prescribed by rule of the Circuit Court and shall continue to perform other duties prescribed by law.

Paragraph 7. On the Effective Date of this Article, the bailiff of the Municipal Court of Chicago shall continue in office for the remainder of his term, and he, his deputies and assistants shall perform such services as may be prescribed by rule of the Circuit Court.

Paragraph 8. Notwithstanding the provisions of Section 8 of this Article, masters in chancery and referees in office in any court on the Effective Date of this Article shall be continued as masters in chancery or referees, respectively, until the expiration of their terms, and may thereafter by order of court, wherever justice requires, conclude matters in which testimony has been received.

Paragraph 9. Until otherwise prescribed by the General Assembly, the cases assigned to magistrates shall be those within the jurisdiction of justices of the peace and police magistrates immediately prior to the Effective Date of this Article.

*Superseded by Rev.St. ch. 37, § 621 et seq. See Ill.Rev.St. ch. 37, § 629.*

Paragraph 10. Notwithstanding the terms of office provided in this Schedule and unless otherwise provided by law, of the twelve judges of the Appellate Court initially elected from the first Appellate Court district pursuant to Section 10 of this Article, four shall be elected for a term of ten years, four for a term of eight years and four for a term of six years; and of the three judges of the Appellate Court so initially elected for the Second, Third, Fourth and Fifth Judicial districts respectively one shall be elected for a term of ten years, one for a

term of eight years and one for a term of six years.

Paragraph 11. The Supreme Court shall assign judges of the circuit courts and of the Superior Court of Cook County to serve on the Appellate Court, in the Appellate Court Districts in which they respectively reside, from the Effective Date of this Article until the commencement of the terms of judges of the Appellate Court selected pursuant to Section 10 of this Article.

Paragraph 12.

(a) Those elected judges in office on January 1, 1963 shall be entitled to seek retention in office under Section 11 of this Article.

(b) The terms of all judges in office on January 1, 1963 expiring otherwise than on the first Monday in December in an even numbered year are extended to the first Monday in December after the general election following the date at which such terms would otherwise expire. For the purpose of application of any laws providing for an increase in judicial salaries, every judge whose term is thus extended shall be regarded as commencing a new term on the date prescribed by prior law for the election of his successor.

(c) Judges in office on the Effective Date shall not be subject to compulsory retirement at a prescribed age until after expiration of their then current terms.

Paragraph 13.

(a) Notwithstanding the provisions of Section 4 of this Article, elections on declarations of candidacy of judges of the Supreme Court in office on the Effective Date shall be held in the Judicial Districts established under Section 3 as follows:

(i) For incumbents from the former First and Second Supreme Court Districts, in the Fifth Judicial District;

(ii) For incumbent from the former Third Supreme Court District, in the Fourth Judicial District;

(iii) For incumbents from the former Fourth and Fifth Supreme Court Districts, in the Third Judicial District;

(iv) For incumbent from the former Sixth Supreme Court District, in the Second Judicial District;

(v) For incumbent from the former Seventh Supreme Court District, in the First Judicial District.

(b) The first vacancy in the office of judge of the Supreme Court which occurs in the former First and Second Supreme Court Districts, and the first vacancy which occurs in the former Fourth and Fifth Supreme Court Districts, and the vacancy which occurs in the former Seventh Supreme Court District shall be filled by the selection of residents of the First Judicial District created under Section 3 of this Article.

(c) The office of any judge shall be deemed vacant upon his death, resignation, removal, retirement, or failure to be retained in office pursuant to Section 11 of this Article.