# THE

# NEW YORK SUPPLEMENT

## VOLUME 152

(89 Misc. Rep. 431)

### JENNINGS v. LINCOLN NAT. BANK.

(Supreme Court, Appellate Term, First Department. March 17, 1915.)

1. BANKS AND BANKING ⚖️154—DEPOSITS—SUFFICIENCY OF EVIDENCE.

In an action by a depositor against the bank, evidence *held* insufficient to sustain a verdict finding that the entries of two separate deposits of the same amount on the passbook and duplicate slips of the depositor and on the loose-leaf ledger of the bank were erroneous, and that there was only one deposit of that amount.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 502–512, 515, 516, 518–533; Dec. Dig. ⚖️154.]

2. WITNESSES ⚖️255—REFRESHING MEMORY—PERSONAL KNOWLEDGE.

It was error for the court to permit the assistant cashier of a bank, who had stated that he had no personal knowledge of the transaction, to testify, after refreshing his recollection by the inspection of a book in which he did not make the entries, that plaintiff had not made a deposit in the bank on a certain day, as she claimed.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 874–890; Dec. Dig. ⚖️255.]

3. APPEAL AND ERROR ⚖️1050—PREJUDICIAL ERROR—ADMISSION OF EVIDENCE.

The admission of that evidence was highly prejudicial, where the deposit claimed by plaintiff had been entered in her passbook and on the bank loose-leaf ledger, and the bank, though claiming those entries to have been erroneously made, did not produce the witnesses who made them to explain the error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153–4157, 4166; Dec. Dig. ⚖️1050.]

Bijur, J., dissenting.

Appeal from Municipal Court, Borough of Manhattan, Fifth District.

Action by Mary W. Jennings against the Lincoln National Bank. Judgment for defendant, and plaintiff appeals. Motion for reargument upon the appeal granted, judgment reversed, and new trial ordered.

Argued January term, 1915, before GUY, BIJUR, and GAVEGAN, JJ.

Charles A. Taussig, of New York City, for appellant.

Dittenhoefer, Gerber & James, of New York City, for respondent.

GUY, J. [1] The motion for a reargument herein is granted. The controversy is as to whether there were two deposits, of $300 each, made by plaintiff in defendant bank, one on the 7th day of May, 1908, and the other on the 15th day of May, 1908, or whether there was but one deposit of such amount. The defendant conceded in open court that a deposit of $300 had been made by plaintiff on May 15, 1908, upon being confronted with documentary evidence in the form of a duplicate deposit slip of that date, signed by an authorized employé of the bank, with whom plaintiff testifies she left the money for deposit after banking hours. Plaintiff also introduced in evidence her bank deposit book, in which there appears an entry, under date of May 7, 1908, of another deposit of $300. The defendant denied that there was any deposit made on May 7, 1908, of any amount, claiming that the entry of a deposit of $300 on that date in plaintiff's deposit book, and a similar entry in the loose-leaf ledger kept by defendant, was erroneously made, and that said deposit was, as matter of fact, the deposit made by plaintiff after banking hours on May 15, 1908. In support of this contention, defendant introduced evidence as to the method of receiving and recording deposits which prevailed in the bank, and further evidence to the effect that during the month of May, 1908, there was no difference in the balancing of the books of the bank of an amount of $300, or thereabouts, and urged that, had plaintiff made two deposits of $300, and been credited with one such amount, of necessity the books would not have balanced, and would have shown a difference of $300. This contention of defendant is not entirely convincing, because, through an erroneous crediting of the deposit of May 7th to the account of another depositor, the books would have balanced.

Plaintiff further meets this contention of defendant by producing written evidence of her deposit in the form of a duplicate deposit slip, crediting her with a deposit of $300 as of May 7, 1908, which she testified was given to her by defendant's assistant cashier a considerable time subsequent to May 15, 1908, after the assistant cashier had communicated with the clerks in the bookkeeping department and obtained the information set forth in the duplicate deposit slip. The assistant cashier testifies that he sent the slip up to the bookkeeping department, apparently with only the name of the plaintiff depositor written thereon, and received from that department the information from which he finally made out or completed the slip which he delivered to plaintiff. When asked where the clerks in the bookkeeping department would go to get such information, he testified, although he had previously stated that he had no personal knowledge in the matter, that they would go to the teller's ledger. The clerk who received the slip in the bookkeeping department and furnished the information to the assistant cashier was not called as a witness, nor was his absence accounted for. The evidence does not disclose whether he got his information from the teller's ledger or from an inspection of an original deposit slip. The president of the bank, Mr. Warren, testified as follows:

"The modus operandi of receiving a deposit from ladies is that it goes to the receiving teller on the female side of the bank, where there is a separate

window. He receives the deposit and enters it in the passbook, and the deposit ticket is checked by an assistant, who enters it in the teller's deposit book, then the deposit ticket is sent to our bookkeeping department, which is on an upper floor, and is entered into a daily balance ledger *of which there is a daily proof taken.* The deposit ticket then goes to the original book of entry, known as the 'teller's ledger.' The deposit slip is then entered into a deposit book, known as the 'book of deposit entries' in the bookkeeping department, run by a third man or assistant, known as a 'debit and credit clerk.' Then it is filed away and retained in the bank records of the deposits of the day."

It is hardly conceivable that, under the system of daily balancing of books which prevails in banks, an erroneous entry in the loose-leaf ledger and in the teller's deposit book, referred to by the president of the bank, could have been made on May 15, 1908, or on the morning of May 16, 1908, erroneously crediting plaintiff with a deposit as of May 7, 1908; but, assuming that such a thing is possible, it is not credible, in the absence of further explanation, that a second error of the kind could have been committed, after the controversy had arisen as to whether there were one or two deposits, by still another clerk, on whose information the assistant cashier made out a duplicate deposit slip as of May 7th. At least the testimony of each one of the clerks connected with such erroneous entries is essential to the proper disposition of the case. The evidence is vague and unsatisfactory as to who made the original entry in plaintiff's deposit book; the witness Witter, apparently, having merely initialed the entry with the letter "W." The clerk or assistant who made the entry in the deposit book originally should have been called as a witness, or his absence accounted for; also the clerk who kept the loose-leaf ledger and made the alleged erroneous entry in that book. No reasons were given for the failure to produce these witnesses.

[2, 3] The learned trial judge committed reversible error, which, in the light of all the evidence, was highly prejudicial to plaintiff's case, in allowing the assistant cashier, Stebbing, over plaintiff's objection and exception, to give the following testimony:

"Q. Now, look at that book and tell me whether or not, after your recollection has been refreshed, this lady, the plaintiff, made a deposit in your bank on the 7th day of May, 1908. A. She did not."

The witness having previously testified that he had no personal knowledge or recollection whatever in connection with the transaction, and did not make any of the entries in the book, the admission of this evidence was, in effect, permitting the witness to assume the function of the jury in determining the only vital issue in the case.

To properly dispose of this unfortunate controversy, it is essential that all doubt as to the actual occurrences should, as far as possible, be removed, and all material evidence produced. For this purpose a new trial is necessary.

The judgment must therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event.

GAVEGAN, J., concurs.

BIJUR, J. I dissent. The question whether the defendant had sufficiently explained the error of its bookkeeping department was

submitted to the jury. Indeed, counsel agreed to submit the case without any summing up, solely on the charge of the court, to which no exception was taken. There appears, it is true, to have been a technical error committed in permitting a witness, on behalf of the defendant, to testify apparently to his conclusion that, after looking at a certain book, plaintiff had made no deposit in the bank on May 7th, and this he did, after saying that his "recollection had been refreshed" by looking at the book. But it is quite clear that, while the question was loosely put and the answer apparently improper, the witness was manifestly testifying as to the significance of bookkeeping entries, because he had already said that he had no personal knowledge of the transaction, and the next question, to which no objection was taken, was "If any deposits were made, they would appear in that book in red ink?" to which the witness answered, "Yes." My review of the testimony leads me to the conclusion that plaintiff failed to make out her case by inability or unwillingness to sufficiently identify a deposit other than the one of May 15th, and by contradictory statements in that regard.

Under such circumstances, I think that the verdict of the jury was in accordance with the evidence, and that the apparent error in the matter of testimony was negligible, and did not affect the result. I think, therefore, that the judgment should be affirmed.