John D. Bennett, S.
The question has been raised as to whether imprisonment in a Federal prison while serving a three-year sentence for transporting in interstate commerce a stolen vehicle is such a crime as would deprive the person imprisoned of his civil rights under section 510 of the Penal Law.
The relevancy of the above question is important in determining* whether the consent of the infant’s father in this adoption proceeding “shall not be required” because he “has been deprived of civil rights ” (Domestic Relations Law, § 111).
*1074 A case directly in point (Matter of O’Connor v. Cohen, 173 Misc. 419) holds that a sentence to a Federal prison does not suspend civil rights under section 510 which reads: “A sentence of imprisonment in a state prison for any term less than for life, or a sentence of imprisonment in a state prison for an indefinite term, having a minimum of one day and a maximum of natural life, forfeits all the public offices, and suspends, during the term of the sentence, all the civil rights, and all private trusts, authority, or powers of, or held by, the person sentenced ’ ’.
A report by the Law Revision Commission (1946 Report of N. Y. Law Rev. Comm., p. 184) states: “Since the Penal Law, section 510, says it is 1 a sentence of imprisonment in a state prison ’ which suspends civil rights, any other sentence does not have that effect. Accordingly, a sentence to a federal prison does not suspend rights. This is more or less consistent with the probable purpose of the statute, to destroy or suspend civil rights upon sentence for a felony. Imprisonment other than in a state prison would not be a felony by state law, for a felony is a crime punishable by death or imprisonment in a state prison. A crime punishable in a federal prison is not necessarily a felony; it is a felony only when it is punishable by imprisonment for a year or more.”
Apparently contra is Nastasi v. State of New York (186 Misc. 1051) where the court held that a sentence served in a “ State prison ” in a State other than New York does not prevent the application of section 510 relating to the suspension of the civil rights of a former resident of New York State while imprisoned in such foreign State prison.
There are, however, other cases interpreting the statute strictly. In Foster v. State of New York (205 Misc. 736) the individual convicted of a felony was being held at the Elmira Reformatory, and the court held that since he was confined to a ‘1 reformatory ’ ’ and not a 1 ‘ State prison ’ ’ he was not deprived of his civil rights.
A similar case (Bowles v. Habermann, 95 N. Y. 246, 251-252) contains the following significant language: ‘ ‘ All through the statutes a distinction is made between State prisons and other prisons, and penitentiaries. This is a highly penal statute, which imposes forfeitures upon a person thus sentenced and suspends his civil rights; and it should not be extended by implication or construction. It should be enforced just as the legislature has enacted it. It is not provided that a felon’s civil rights shall be suspended on sentence to a county jail or penitentiary; but only *1075 in case of a sentence and imprisonment in a State prison. State prisons are State institutions, well known as such, under the supervision and management of the State. Kings County penitentiary is a county institution, managed and controlled by the county, and under the supervision of its officers; and the language of the statute does not apply to such a case. It may be conceded that there is the same reason for suspending the civil rights of one sentenced for a felony for ten years to a penitentiary as for suspending the civil rights of one sentenced for the same offense, for the same term of imprisonment to a State prison. But the legislature made a general rule, and we cannot apply it to a case not brought within its terms.”
Section 510 of the Penal Law specifically reads “ state prison ”. To extend this to a “ federal prison ” would appear to be writing something into the law presently not provided for. Further, the position taken by the Court of Appeals in the Bowles case (supra) would seem to require action by the Legislature if the provisions of section 510 are to apply to persons imprisoned in Federal prisons.
The matter is further complicated by the fact that no proof has been offered to show that the natural parent is or was domiciled in New York State. Since the crime for which he is serving his sentence was committed in a State other than New York, he may prove to be a citizen of a foreign State. If so, there arises the interesting question (apparently not previously discussed in the cases) as to the applicability of section 111 of the Domestic Relations Law, to a citizen of a foreign State who there “ has been deprived of civil rights ”. Quaere whether his consent is required in the absence of proof of abandonment or other circumstances set forth in the statutes rendering his consent unnecessary.
The situation here presented again points up the need for review by the Legislature of the basic criteria, substantive and procedural, in adoption matters. Specifically the statute now permits a natural father to lose his child without notice (unless the court otherwise directs) without requiring his consent if he is confined to a “ state prison ” no matter what the crime. On the other hand, the best interests of the child and its welfare may not be considered until after the issue of consent has been determined. The court, therefore, is often confronted with a state of facts where the best interests of the child would apparently require adoption by the foster parents, but the failure to satisfy the requirement in the statute as to consent dictates the denial of the petition. Frequently one of the natural parents has remarried and the new spouse seeks to adopt a child with *1076 whom a very good relationship exists, and the natural parent’s refusal to consent seems to be determined by questionable motives rather than parental love. It would be valuable for the Legislature to consider whether the best interests of the child should carry as much weight as the need for a parent’s consent in the determination of an adoption proceeding.
In the instant matter, the petitioner is directed to furnish proof of the domicile of the natural father.
Proceed accordingly.