Henry W. Lengyel, J.
This claim was -filed September 29, 1965. Claimaxxt was arrested July 9, 1945, convicted in Onondaga County Court of grand larceny, and subsequently confined to the Elmira Reformatory. In January, 1948, he was paroled but was returned to the Elmira Reformatory on April 28, 1948 *201 for violation of parole. On July 11, 1950, claimant was transferred to Attica State Prison. He was reparoled on October 24, 1951. While on parole and on July 9, 1952, claimant was again arrested on a new charge of grand larceny and later convicted and returned to Attica State Prison. Subsequently, he was transferred to Clinton and Auburn State Prisons until August 31, 1965, when he was again paroled. He was on parole at the date of the trial.
The parties agreed that the claimant served a total sentence of 7 years on the original charge and that the maximum sentence allowable was 5 years. The Avrongful detention commenced July 9, 1950 and ceased July 9, 1952.
False imprisonment begins the moment of illegal detention (Grago v. Vassello, 173 Misc. 736) and is a continuing trespass, which becomes complete the moment the illegal detention ceases. (Dill v. County of Westchester, 4 A D 2d 779; Molyneaux v. County of Nassau, 22 A D 2d 954, affd. 16 N Y 2d 663; Schildhaus v. City of New York, 23 A D 2d 409, affd. 17 N Y 2d 853; Brush v. Lindsay, 210 App. Div. 361.)
A claim to recover damages for false imprisonment must be filed Avithin 90 days after the accrual of such claim unless the claimant within such time shall file a written notice of intention to file a claim therefor. (Court of Claims Act, § 10, subd. 3.) However, if a claimant is under a disability, such as imprisonment, at the time his claim accrues, (Nathan v. Equitable Trust Co., 250 N. Y. 250; Strungosky v. Marsh Holding Corp., 196 Misc. 162), he may present his claim within two years after the disability is removed. (Court of Claims Act, § 10, subd. 5.)
The false imprisonment herein commenced on July 9,1950 and continued until July 9, 1952, when the claimant herein was arrested and subsequently confined on a totally unrelated charge.
On July 9, 1950 he was confined to Elmira Reformatory and we assume that on July 10, 1950, he was still confined at said reformatory; or, if not, that he was under transportation on said date to Attica State Prison, where he was received for confinement on July 11, 1950.
Elmira Reformatory ‘ ‘ is not a State prison and is not, therefore, included within the disability provisions of section 510 of the Penal Law.” (Foster v. State of New York, 205 Misc. 736, 737; cf. Bowles v. Habermann, 95 N. Y. 246 and Matter of Anonymous, 12 Misc 2d 1073, mod. 17 Misc 2d 691.) Therefore, the disability imposed by section 510 of the Penal Law did not take effect until July 11, 1950. As said legal disability occurred after the false imprisonment initially accrued, the tAvo-year statute provided by subdivision 5 of section 10 of the Court of *202 Claims Act does not apply to the claim herein. However, as the claimant herein was under actual confinement on July 9 and 10, he could not bring his claim against the State. He was released on parole on October 24, 1951, but was still under a legal disability to sue while on parole unless he came within the purview of one of the exceptions established by section 510 of the Penal Law. Said statute essentially provides that a person sentenced to a State prison for less than life forfeits his civil rights. However, such a person may sue “ with respect to matters other than those arising out of his arrest or detention * * * while he is released on parole ”.
In Grant v. State of New York (192 Misc. 45) it was held that, under said statute, a prisoner could sue, for personal injuries incurred in a State prison, while he was on parole. However, Presiding Judge Ryan also stated (p. 47) that: “ The amendment may affect actions and proceedings directly flowing from the arrest or detention. Perhaps it suspends actions for false arrest, false imprisonment or malicious prosecution. But, in our opinion, it should not be construed to apply to all causes which may arise during detention.”
In Gershinsky v. State of New York (6 A D 2d 964, 965, affd. 6 N Y 2d 798) the court stated, in dicta, that: “ Claimant argues that a convict on parole is still under the disability of section 510 of the Penal Law because he is serving his sentence outside prison walls (this, of course, was before the amendment of Penal Law, § 510 * * * which provided, inter alia, that a parolee might sue on being released upon parole) ”. However, as it was not pertinent to the cause before it, the appellate court did not develop an analysis of said statute.
We have not found any New York case, which has interpreted the language of said statute in respect to a claim for false imprisonment. It seems clear that the social concern at the time this statute was amended was with events affecting a prisoner while he was on parole. In the Beport, Becommendations and Studies of the Law Bevision Commission of the State of New York, 1946, at page 163, it was stated: “ A person sentenced to state prison, while released on parole, although technically still serving his sentence, is presumably endeavoring to pursue a normal course of life. To deny him capacity to sue is at the outset to place him at a serious disadvantage in conducting business affairs or vindicating personal rights.” This position was supported by the Committee on State Legislation of the New York County Lawyers’ Association, Report No. 16, February 2, 1946, which in part stated: “ During a period of such liberation (parole) such persons may engage in business, *203 make contracts and do other normal actions well calculated to aid in their rehabilitation. They are, however, strictly speaking, exercising ‘ civil rights ’, etc., which the present law prohibits. They are, of course, under disability to commence an action arising while they are thus at large in the community. * * * it is foolish to expect people to be at large and rehabilitate themselves through normal conduct, but deprive them of power to assert their rights.” (Matter in parenthesis added.) Judge Ryan in Grant v. State of New York (supra) made a logical extension of this statute to permit a parolee to sue the State for personal injuries incurred in prison because of the alleged negligence of a State prison employee. He pointed out that to delay such suits could prevent substantial justice by depriving the parties of necessary and material witnesses. This we do not find to be an important factor in claims for false imprisonment. We believe the Grant case extended the statute as far as it should be extended.
It is our opinion that a claim for false imprisonment is a matter arising out of the prisoner’s arrest or detention and, therefore, does not come within the established exceptions to the suspension of civil rights established by said section 510. We believe that the only available remedy to a prisoner in confinement or on parole from a State prison, in a situation as outlined above, is to bring a proceeding in habeas corpus to establish his false imprisonment and release therefrom. To hold otherwise, would permit a prisoner on parole from a State prison to bring a claim in this court which would in effect determine the fact of false imprisonment but which could not accomplish a release therefrom because such would be outside this court’s jurisdiction. We find that the claimant herein was still under the disability of said section 510 during the period October 24, 1951 to July 9, 1952. As he went from parole back to State prison on the unrelated charge on July 9, 1952, he remained under a physical as well as a legal disability until released on parole on August 31, 1965. On that date he was still under a legal disability under said section 510. However, he then came under the exception established by said statute and could bring a claim for false imprisonment under his first confinement, as same had been concluded and was not a matter arising out of the arrest or detention which created the existing legal disability.
As the false imprisonment initially commenced when said claimant was not under the legal disability created by section 510 of the Penal Law, he had 90 days from August 31, 1965, in which to bring his claim. (See Foster v. State of New York, *204 supra, Molyneaux v. County of Nassau, supra.) As said claim was filed on September 29, 1965, it was timely filed. The State’s motion to dismiss is, therefore, denied.
We believe we should point out that the illegality of the claimant’s detention for more than five years was not established in law until the decision of People ex rel. Johnson v. Martin (203 Misc. 546, affd. 283 App. Div. 478, affd. 307 N. Y. 713 [1954]). (See, also, Waterman v. State of New York, 207 Misc. 773, affd. 1 AD 2d 235, affd. 2 N Y 2d 803.)
Claimant has demanded $19,800 for the alleged loss of earnings, and shame, humiliation and loss of freedom. As stated in Waterman v. State of New York [supra, p. 776): “ Claimant’s record of employment, when free, is not impressive for its zeal or industry. His desire to keep out of trouble, if existent, was lacking in perseverance to judge by his frequent violations of parole.”
We believe that under all the circumstances an award of $5,000 is adequate and we make such an award to claimant herein.