**Hillard CHUBBS, Plaintiff,**

v.

**The CITY OF NEW YORK and Policeman Cameron Reese, #23495, of 88th Precinct, Brooklyn, New York, Defendants.**

**Nos. 70–C–996, 71–C–1.**

United States District Court, E. D. New York.

Jan. 15, 1971.

Hillard Chubbs, pro se.

Corp. Counsel of the City of New York, New York City, for defendants; Saul Bernstein, New York City, of counsel.

## MEMORANDUM AND ORDER

WEINSTEIN, District Judge.

This is a civil rights case (70–C–996) against an arresting officer and the City of New York seeking damages of $1,500,-000 for false arrest and illegal detention. 42 U.S.C. § 1983. Plaintiff was arrested one evening, as he claims without probable cause; identified by the complaining witness almost immediately; and held, in his submission illegally, until the next morning when he was arraigned. The arrest led to plaintiff's conviction after trial by jury of first degree sodomy and burglary and second degree assault. He received a sentence of fifteen to twenty years. These convictions have been affirmed. App.Div., 316 N.Y.S. 2d 994 (1970). Leave to appeal was denied on December 10, 1970.

Even though plaintiff's civil rights action states a valid claim for relief, the probability of his obtaining a significant remedy is miniscule and the burdens on the court, defendants, the bar and the penal system of allowing the litigation to proceed are great. Under the circumstances described below we refuse to permit this hopeless case to proceed.

One petition for a writ of habeas corpus arising from the conviction has already been dismissed by this Court. United States ex rel. Chubbs v. Deegan, 70–C–1064. A second petition (71–C–1) has been filed based on the theory that the policeman's testimony corroborating complainant's identification violated defendant's constitutional rights; this petition must also be dismissed.

## I. ALLEGATIONS IN COMPLAINT

Petitioner, a prisoner in the State Prison at Auburn, New York, mailed a handwritten complaint and motion for leave to proceed in forma pauperis and for assignment of counsel to this Court in August of 1970. He alleges that at 6:25 P.M. on March 8, 1965 on a street corner in Brooklyn he was arrested and "asked" by a police officer to accompany him to a restaurant where he was "identified by the complainant witness," who worked there, "as the man who Assaulted and Raped her on the early hours of March 8, 1965 at her house." The locations referred to in the complaint are, the Court judicially notices, a short distance from each other in the Bedford-Stuyvesant area. See, United States v. City of New York, 132 F.Supp. 779, 782 (E.D.N.Y.1955). "After the identification was made," he "was placed formally under Arrest" and then taken to the precinct house where he was "charged." He was "Arraigned in the Criminal Court" on March 9, 1965 at approximately 10:25 A.M.. On July 22, 1965 he was found guilty by a jury.

Although the complaint is ambiguous, the claim appears to be that plaintiff was "arrested at approximately 6:25 P.M." on March 8 without a warrant and without probable cause—apparently before the identification in the restaurant by the victim—"since, although, the police did have a description of the person who Allegedly Committed the Crime, there was no Reason to believe the plaintiff was him, until identified by the Complainant." He seeks damages on the ground of an illegal arrest, "Illegal imprisonment for 16 hours," "Illegal delay in Arraignment," and indictment for a more serious crime than was charged in the affidavit.

The Court ordered the complaint filed and docketed and served upon defendants without prepayment of fees. It denied the motion for assignment of counsel with permission to renew upon a showing of some merit.

In November defendants answered by a general denial and general allegations of lack of jurisdiction. All parties requested a jury trial. Relying solely on

the pleadings and legal argument, plaintiff moved for summary judgment. Following denial of plaintiff's motion for summary judgment, plaintiff moved for (1) a pre-trial conference and the fixing of a trial date; (2) assignment of counsel; (3) a writ of habeas corpus directing production of plaintiff in court for the purpose of conducting the trial; (4) issuance of subpoenas for witnesses for the trial; and (5) discovery of specified documents. The Court reserved decision on this motion.

## II. INVESTIGATION AT COURT'S REQUEST

Prior experience with cases of this kind suggested that the plaintiff would have difficulty pressing this litigation without an attorney and that the Corporation Counsel of the City of New York, appearing for defendants, would give the Court little assistance. Accordingly, in September it wrote to a member of the bar in whom it had confidence requesting an investigation of the matter before the Court took further action. He was to make a factual and legal inquiry to determine whether there was sufficient merit in the case to warrant appointment of an attorney—i. e., "whether counsel might possibly be of assistance." To avoid some of the burdens of the attorney-client relationship while affording the protection of the attorney-client privilege the Court instructed this attorney as follows:

"It should be clearly understood that you are not being appointed as counsel and you have no obligation or responsibility to the plaintiff or this Court as counsel. Nevertheless, for purposes of the attorney-client privilege, any communication with the client should be treated by you as if made in the course of negotiations between lawyer and client to determine whether representation will be undertaken. Thus, the attorney-client privilege will apply."

The report of the attorney was not encouraging to plaintiff but it did conclude, as does the Court, that a claim has been stated within the four corners of the complaint. The pertinent parts of the report are set out below:

## "EVALUATION OF PLAINTIFF'S CLAIMS

### "1. *Unlawful arrest*

Technically, this claim appears to state a cause of action against the arresting officer. The City is probably not a proper party defendant. Monroe v. Pape, 365 U.S. 167, 187–192 [81 S.Ct. 473, 5 L.Ed.2d 492] (1961). While plaintiff was convicted of the criminal charges for which he was arrested, it is possible that probable cause of his arrest did not exist at the time he was arrested, due to an insufficient description by the complainant of her assailant. *Contra*, Palma v. Powers, 295 F.Supp. 924, 941 (N.D.Ill.1969) (plaintiff's criminal conviction 'conclusively establishes that there was probable cause for his arrest.').

"There is substantial authority that any unconstitutional arrest is actionable under 42 U.S.C. § 1983, and that the plaintiff need not allege that the arresting officer acted maliciously or that the arrest constituted a flagrant violation of the plaintiff's Fourth Amendment rights. Basista v. Weir, 340 F.2d 74, 81 (3d Cir. 1965); Nesmith v. Alford, 318 F.2d 110 (5th Cir. 1963), cert. denied, 375 U.S. 975 [84 S.Ct. 489, 11 L.Ed.2d 420] (1964); Joseph v. Rowlen, 402 F.2d 367 (7th Cir. 1968). *Contra*, Notaras v. Ramon, 383 F.2d 403 (9th Cir. 1967).

"However, since Chubbs' complaint acknowledges that probable cause for his detention was established once the complainant identified him, then (assuming his initial arrest was made without probable cause) his damages for the brief period during which he was under unlawful restraint would appear to be negligible. Since Chubbs

was quickly identified by the complainant, and later convicted of the very serious crimes for which he was arrested, there would seem to be nothing in the arresting officer's conduct warranting the imposition of punitive damages.

"2. *False imprisonment and delay in arraignment*

"The Southern District has held that these claims are not actionable under 42 U.S.C. § 1983. Bradford v. Lefkowitz, 240 F.Supp. 969, 976–977 (S.D.N.Y.1965). In any event, since Chubbs concedes that probable cause for his detention was established soon after his initial arrest, his detention was probably not in itself unlawful.

"As for the delay in arraignment, Chubbs does not allege that he confessed during the delay, or was otherwise prejudiced by the delay. *Compare* Mallory v. United States, 354 U.S. 449 [77 S.Ct. 1356, 1 L.Ed.2d 1479] (1957). At any rate, an overnight delay in arraignment may not necessarily be deemed excessive.

"3. *Indictment for a more serious crime than that charged in the arresting officer's affidavit*

"This apparently violates no constitutional or statutory provision. People ex rel. Hirschberg v. Close, 1 N.Y. 2d 258 [152 N.Y.S. 1, 134 N.E.2d 818] (1956).

"STATUTE OF LIMITATIONS

"The three-year statute of limitations contained in N.Y. CPLR 214(2) applies to actions brought under 42 U.S.C. § 1983. Swan v. Board of Higher Educ., 319 F.2d 56 (2d Cir.1963); Beyer v. Werner, 299 F.Supp. 967 (E.D.N.Y.1969).

"Chubbs' complaint was filed on August 11, 1970, nearly five years after his conviction. However, the running of the statute of limitation [was suspended by Chubbs' incarceration, pursuant to N.Y. CPLR 208. United States ex rel. Sabella v. L. I. Press, (E.D.N.Y.1970).]

"CONCLUSION

"While plaintiff's claim of an unconstitutional arrest may technically state a cause of action, there is little substance to his contention in light of the fact that probable cause for his detention was admittedly established, shortly after his arrest, by the complainant's identification of plaintiff as her assailant, and in view of plaintiff's conviction of the crimes for which he was arrested.

By letter dated December 1, 1970 the Court wrote to plaintiff explaining that an investigation had been conducted at the Court's request, setting out the full report—a portion of which has been quoted above—and notifying him that the Court was "prepared to dismiss * * * unless you can present * * * facts indicating that the action should proceed." Plaintiff's response was a legal argument against dismissal containing no additional facts. It can be summarized as stating the proposition: since a cause of action is stated the Court is not authorized to dismiss.

III. INVESTIGATION BY COURT

 On its own motion the Court then obtained from various depositories in the state the records of the criminal trial and appeal. Such judicial notice at the pleading stage is authorized. Ralph Hochman & Company v. Fort Stanwix Mfg. Co., 284 F.Supp. 1000 (N.D.N.Y. 1968); Bishop v. Byrne, 265 F.Supp. 460 (S.D.W.Va.1967); Romiti v. Kerner, 256 F.Supp. 35, 42 (N.D.Ill.1966); Golaris v. Jewel Tea Co., 22 F.R.D. 16, 19 (N.D.Ill.1958).

 Judicial notice on the Court's own motion can be exceedingly danger-

ous because, given an opportunity, the party adversely affected may be able to show why judicial notice should not be taken or why facts properly noticed do not have the significance attributed to them by the court. It is for this reason that the Proposed Rules of Evidence for the United States District Courts and Magistrates provide:

> Rule 2–01(e) Opportunity To Be Heard. A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter to be noticed. 46 F.R.D. 195 (1969)

*See also, e. g.*, Ohio Bell Telephone Co. v. Public Utilities Commission, 301 U.S. 292, 302–303, 57 S.Ct. 724, 729–730, 81 L.Ed. 1093, 1100–1101 (1937); Garner v. State of Louisiana, 368 U.S. 157, 173–174, 82 S.Ct. 248, 256–257, 7 L.Ed. 2d 207, 219 (1961); Rule 804 Model Code of Evidence; Rule 10(1) Uniform Rules of Evidence; 6 Calif. Law Rev. Comm'n, Tentative Judicial Notice Recommendation and Study 819–820 (1964); Davis, Judicial Notice, 1969 Law and the Social Order 513, 530–532. Accordingly, as noted at the end of this memorandum, the plaintiff will be afforded an opportunity to controvert the facts judicially noticed.

The testimony at the trial established— and on appeal defendant practically conceded—that there was ample basis for his arrest even before he was identified by the complainant. Defendant was well known to her since she was a waitress in a restaurant where he ate and he had persistently sought to take her out. At one point when he was rebuffed he retorted, "I am going to get you." Early one morning a man, whom she identified as defendant, broke into her room, wakened her from sleep, struck, threatened and sexually assaulted her. Next evening the victim observed the defendant on the street and called the police but since he had boarded a bus he was not then apprehended. She later observed him entering and leaving the restaurant where she worked and she immediately contacted a patrolman on the street, giving a full description. He was picked up by the policeman—who is now a defendant in the present civil action—and brought to the restaurant. She thereupon positively identified him as her attacker. Her testimony was corroborated by her mother, a doctor and the policeman who made the arrest.

■ At the trial the defendant did not testify; his defense was alibi. On the appeal the chief point was that the policeman's testimony as to the identification was hearsay and should have been excluded—the same claim made in the pending habeas petition. It is not a constitutional issue. *See* California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970); Dutton v. Evans, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970); Gilbert v. California, 388 U.S. 263, 272, 87 S.Ct. 1951, 1956, n. 3, 18 L.Ed.2d 1178 (1967); United States v. Miller, 381 F.2d 529, 537–538 (2d Cir. 1967), cert. denied, 392 U.S. 929, 88 S. Ct. 2273, 20 L.Ed.2d 1387, rehearing denied, 393 U.S. 902, 89 S.Ct. 66, 21 L. Ed.2d 188 (1968); United States v. Barbati, 284 F.Supp. 409, 411–413 (E.D. N.Y.1968); Preliminary Draft of Proposed Rules of Evidence for the United States District Courts and Magistrates, Rule 8–01(c) (2) (iii) (1969); Note, Right of Confrontation: Substantive Use At Trial Of Prior Statements, 84 Harv.L.Rev. 30, 108–117 (1970).

■ The policeman testified, without contradiction—and with no challenge on cross-examination—that an arrest was not made until there had been an identification by the victim; after receiving a full description of the defendant, he saw him on the street and asked if he would accompany him to the restaurant "to clear up a matter"; the defendant readily consented. Thus, the trial record shows, if it is credited, no basis for the claim of an illegal arrest or an illegal detention.

## IV. UNAVAILABILITY OF SUMMARY JUDGMENT

It is barely possible that the defendant may now, in this civil litigation, testify and provide new light on the circumstances surrounding the identification. But, even though the issues in the two cases are somewhat different, this seems highly doubtful. He was well represented at the criminal trial and the witnesses against him were thoroughly cross-examined. Moreover, based upon the state record, the defense of good faith seems almost overwhelming. See Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); Notaras v. Ramon, 383 F.2d 403 (9th Cir. 1967).

■ On these facts we would be inclined to grant summary judgment. But, in this Circuit at least, District Courts may not rely to any substantial extent on summary judgment predicated upon testimonial proof to avoid a full trial even though a recovery seems hopeless. As the Court of Appeals recently noted in Dolgow v. Anderson, 438 F.2d 825, p. 830 (2d Cir. 1970):

> Although a lengthy technical trial may seem fruitless when plaintiffs' prospect of ultimate success on the merits might be viewed as small, we recall the words of Judge Frank:
>
>> "A litigant has a right to a trial where there is the slightest doubt as to the facts."

*See also* Klein v. Auchincloss, 436 F.2d 339, 340, (2d Cir. 1971).

Since courts are composed of mere mortals they can decide matters only on the basis of probability, never on certainty. The "slightest doubt" test, if it is taken seriously, means that summary judgment is almost never to be used—a pity in this critical time of overstrained legal resources. Frank, American Law: The Case for Radical Reform, 146–152 (1969). Slight as it is, there is a doubt as to the facts if the record of the criminal trial is treated only as testimonial proof.

## V. DIFFICULTIES WITH PRISONER PRO SE CIVIL RIGHTS CASES

Prisoner pro se applications raise some of the most troublesome current problems in judicial administration. If there is merit in a prisoner's claim every judge wishes to see justice promptly done. This is true whether the litigation is cast as a habeas corpus petition seeking to set aside a conviction or as a civil rights complaint seeking monetary damages for past harm or an injunction for continuing violations. Yet many of the strengths of our adversary system which courts rely upon in doing justice are absent in these pro se cases. There is not even the minimum screening by an attorney— an officer of the court—certifying that "there is good ground to support" the pleading. Fed.R.Civ.P. 11.

A serious problem is posed: how can we make the most effective use of our limited legal resources to insure that full attention is given to those cases which we have some reason to believe may have merit, but at the same time allow for prompt disposition of meritless claims? In this kind of litigation some modification of our adversary system may well be warranted. Such an innovation can hardly be provided by district judges on a case by case basis. New institutions, new rules laid down by appellate courts and perhaps even new legislation will need consideration. The cooperation of judges at all levels of the system, of attorneys, of law schools, and of legislators seems called for.

The number of pro se prisoner applications is great and is rising rapidly. As noted in the 1970 Annual Report of the Director of the Administrative Office of the United States Courts (at p. II–44):

> Prisoners, both state and Federal, urge their papers upon Federal courts in mounting quantities. Now 18 percent of total civil filings, they were only 4 percent in 1963. This volume— 15,997 cases in 1970—is up 24 percent over last year and 276 percent since

1963. * * * State prisoner filings * * * are climbing at more than double the rate of Federal. * * * [P]erhaps the most startling statistical fact is that while civil filings generally increased 47 percent from 1960 to 1970 prisoner petitions increased by 635 percent.

Our experience suggests that many of these statistical units represent repeated applications arising from the same transaction—a single prisoner may seek a variety of post-conviction remedies in the state courts and then in the federal courts. *See, e. g.,* United States ex rel. Diblin v. Follette, 294 F.Supp. 841 (E.D. N.Y.1968), affirmed, 418 F.2d 408 (2d Cir. 1969). As a first step in meeting the problem of duplication, the New York State Judicial Conference, cooperating with state and federal courts, is now recording all post-conviction applications in both New York State and Federal Courts to assist in reviewing successive applications. The system does not, however, include civil rights actions arising from state prosecutions.

Prisoners apparently find it increasingly attractive to file both petitions for habeas corpus and civil rights complaints. In some respects the civil rights complaints are more difficult to deal with than habeas corpus petitions. In the former the facts are often completely unresolved while in the latter—at least as they are increasingly coming into the federal courts—there is usually a record in the state courts which is either adequate—and frequently conclusive (*see* 28 U.S.C. §§ 2244, 2254(1))—or needs but slight supplementation by a hearing narrow in scope. Prisoner civil rights actions run the gamut from complaints about treatment in prison to complaints about witnesses, policemen, district attorneys and newspapermen who offended before, during and after trial. *See, e. g.,* United States ex rel. Sabella v. Newsday, 315 F.Supp. 333 (E.D.N.Y. 1970); Sostre v. Rockefeller, 312 F.Supp. 863 (S.D.N.Y.1970).

Brooding on the past, and supported by enough legal skill among fellow jailhouse inmates, there is almost limitless scope to draft a complaint, bottomed on Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), charging violation of constitutional rights. Pro se pleadings, we are instructed, must be construed as favorably as possible towards the plaintiff in determining whether he has stated a valid claim for relief. *See, e. g.,* Dioguardi v. Durning, 139 F.2d 774 (2d Cir. 1944).

The series of dilemmas raised by the pro se prisoner petitioner or plaintiff has not escaped notice. *See, e. g.,* United States v. Simpson, 436 F.2d 162 (D.C. Cir., 1970); Johnson v. Avery, 393 U.S. 483, 491–497, 89 S.Ct. 747, 752–755, 21 L.Ed.2d 718 (1969) (Douglas, J. concurring); Report Of Committee on Habeas Corpus And Post Conviction Review Of The United States Judicial Conference, 33 F.R.D. 363, 384–385 (1963); Symposium on Post Conviction Review, 33 F.R.D. 409 (1963); ABA, Minimum Standards For Criminal Justice; Post-Conviction Remedies, § 3.1–4.5 (1968); President's Commission On Law Enforcement And Administration of Justice, Task Force Report: Corrections 83–85 (1967); Id., Task Force Report: The Courts 47, 54 (1967); Jacob & Sharma, Justice After Trial: Prisoners Need The Legal Service In A Criminal Correctional Process, 18 Kan.L.Rev. 493 (1970); Law Student Clinical Work In Prisons and Jails, III Council On Legal Responsibility, Inc., (No. 3, Nov. 1970); Note, Proposed Reformation Of Federal Habeas Corpus Procedure: Use Of Federal Magistrates, 54 Iowa L.Rev. 1147, 1154 (1969); Prison Writ-Writing: Three Essays, 56 Calif.L.Rev. 342 (1968); Note, Legal Services For Prison Inmates, 1967 Wisc.L.Rev. 515.

Although dealing with a federal prisoner's application under section 2255 of title 28 of the United States Code, the *Simpson* case, 436 F.2d 162 (D.C.Cir., 1970), is particularly useful in suggesting the use of an "amplifying" pro-

cedure requiring the plaintiff to supply additional facts where his papers are "too conclusory or general to require judicial processing" (at p. 166); informal discovery through intermediaries by the court (p. 167, n. 13); use of federal magistrates for investigation and report (at p. 167); or the supplying of legal counsel for prison inmates (p. 167, n. 14).

■ If the case has merit and a trial is required counsel should be appointed. The prisoner himself can simply not prepare and try the case effectively. *See* Powell v. Alabama, 287 U.S. 45, 68–69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932) ("The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel."). *See also* Goldberg v. Kelly, 397 U.S. 254, 268–271, 90 S.Ct. 1011, 1021–1022, 25 L.Ed.2d 287 (1970); People of New York ex rel. Menechino v. Warden, Green Haven State Prison, 27 N.Y.2d 376, 318 N.Y.S.2d 449, 267 N.E. 2d 238 (1971); ABA, Minimum Standards for Criminal Justice: Post-Conviction Remedies § 4.4 (1968).

Appointing counsel for the petitioner in every case is not an ideal solution. Only recently have the District Courts been authorized to provide payment for appointed counsel in habeas corpus cases. 84 Stat. 916, 919, amending 18 U.S.C. § 3006A. In civil rights cases counsel would serve without fee. We must recognize that the resources of the bar for *pro bono* work are limited. Johnson v. Avery, 393 U.S. 483, 493, 89 S.Ct. 747, 752–753, 21 L.Ed.2d 718 (1969) (Douglas, J. concurring); Note, Structuring The Public Service Efforts Of Private Law Firms, 84 Harv.L.Rev. 410 (1970); Cahn and Cahn, Power To The People Or The Profession?—The Public Interest In Public Interest Law, 79 Yale L.J. 1005, 1008 (1970). Diverting legal resources from work for the ghetto poor who ultimately might be helped by lawyers to prisoners who cannot seems non-utilitarian by any rational calculus.

Were courts to appoint counsel in all cases knowing that most were meritless, the ethical responsibility of the appointed lawyer might create intolerable burdens on himself and others. Once appointed he might feel compelled to utilize the full panoply of civil discovery devices including depositions and interrogatories. Just because he was appearing *pro bono* he might press the case more strongly than he would if financial considerations of the client mandated a more practical approach. *Cf.* Rosado v. Wyman, 322 F.Supp. 1173, 1193 (E.D.N.Y. 1970), aff'd, 437 F.2d 619 (2d Cir., 1970). Discovery might be as broad as the plaintiff's lawyer could arrange, bearing in mind the possibility—no matter how remote—that some new fact might turn up whose significance the client could hardly have been expected to understand.

The lawyer would not be limited to the precise theory of his client but would seek to develop any other legal grounds that had the slightest possibility of success. The harassment of witnesses, policemen and prosecutors that might result were the scores of pending prisoner civil rights cases in New York City to proceed in this way must be a matter of concern in this period when state criminal law enforcement is strained to the breaking point. Prosecuting assiduously, using all forms of discovery, might seriously interfere with state criminal processes, further exacerbating the relationship of federal courts to state law enforcement authorities. At the very least the court would have to consider appointing counsel for witnesses and others not represented by a unit of the state government.

Another not inconsiderable problem is that of bringing prisoners from outlying state institutions to spend time in the federal house of detention preparing for and awaiting a hearing or trial. Not only is it expensive but it is disruptive of prison rehabilitative routine. Some prisoners may even utilize the device to break up the tedium of prison and to be brought, even for a short time, nearer to those who might visit them.

Establishment of a screening device through the use of law students or others at the prisons would improve the quality of the papers received by the courts. It might also dissuade some prisoners from wasting their, and the court's, time with meritless litigations, allowing concentration on more useful rehabilitation activities. *See, e. g.,* Jacob and Sharma, Justice After Trial, 18 Kans.L.Rev. 493, 503–504 (1970). But it seems unlikely to entirely solve the problem. It can be expected that any law school program in a prison will be primarily directed towards pedagogical goals rather than the needs of the whole prison population.

Even if no attorney will certify that "there is good ground to support" the case (Fed.R.Civ.P. 11), the prisoner will still be able to proceed pro se. Moreover, were such prisoner representatives to report to the court their evaluation of the lack of merit in a prisoner's complaint they might soon lose the confidence of at least part of the prison population—and this problem is particularly acute for an organization such as the Legal Aid Society. *But cf.* Negron v. Wallace, 436 F.2d 1139, 1141, (2d Cir., 1971); Note, Legal Services for Prison Inmates, 1967 Wisc.L.Rev. 515, 527–530 suggesting that a respected lawyer can dissuade many from pressing meritless claims. The posture of the attorney who is both an officer of the court and dedicated to his client's interest is difficult even when, as today, the primacy of the advocate's role is clear.

It may be that some institutional system of counsel might be useful. Such a system might also serve to better protect the "ignorant and docile inmate" whose valid claim is not now asserted. Note, Legal Services for Prison Inmates, 1967 Wisc.L.Rev. 515. The assistance provided by New York State in its mental hospitals may provide a helpful model. *See* New York Mental Hygiene Law § 88; Judicial Conference of the State of New York, Fourteenth Annual Report 80–83 (1969). But the court cannot let any non-judicial screening process supercede its own obligation to winnow out the meritorious from the unmeritorious case.

In this district the suggestion has been made that our Magistrates actually visit the prisons and interview the prisoners. There are obvious problems connected with such a procedure including that of how to treat plaintiffs and petitioners who insist on pressing their claims despite an adverse report from the Magistrate. It is not clear whether the Magistrate should be acting as investigator, judge or in some other capacity. *Cf.* Pub.L.No. 90–578, § 636(b) (3) (1968); Note, Proposed Reformation of Federal Habeas Corpus Procedure: Use of Federal Magistrates, 54 Iowa L.Rev. 1147 (1969); ABA, Minimum Standards for Criminal Justice: Post-Conviction Remedies § 4.1 (masters for preliminary inquiry). It would seem essential to fix his role as precisely as possible.

The procedure suggested by the court to the plaintiff in the instant case, and rejected by him is, it must be admitted, disquieting. It has aspects of the faceless investigator foreign to our adversary system.

Dismissals on the ground that there are adequate state remedies seem questionable. Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967); American Law Institute, Study of the Division of Jurisdiction Between State and Federal Courts, 164, 168 (1969); Note, Exhaustion of State Remedies Under the Civil Rights Act, 68 Colum.L. Rev. 1201 (1968); Note, Limiting the Section 1983 Action in the Wake of Monroe v. Pape, 82 Harv.L.Rev. 1486, 1498–1501 (1969); Chevigny, Section 1983 Jurisdiction: A Reply, 83 Harv.L.Rev. 1352 (1970). It is hard to justify abstention in any civil rights case. Wright v. McMann, 387 F.2d 519, 524–525 (2d Cir. 1967); *cf.* Marshall v. Sawyer, 301 F.2d 639, 646 (9th Cir. 1962); Wright, Federal Courts § 52 (2d ed. 1970); American Law Institute, Study Of The Division Of Jurisdiction Between State And Federal Courts 176–178 (1969). But it is certainly not warranted in the case before us. The New York statute

of limitations applicable in this case is tolled for only 10 years, less time than the defendant in the instant case may spend in jail. N.Y.C.P.L.R. § 208; United States ex rel. Sabella v. Newsday, 315 F.Supp. 333 (E.D.N.Y.1970). *Cf.,* Note, The Collateral Consequences of Criminal Conviction, 23 Vand.L.Rev. 939, 1025–1027 (1970). And such prisoners in New York are, apparently, disabled from bringing actions in state courts. N.Y. Civil Rights Law, McKinney's Consol.Laws, c. 6, § 79; Green v. State, 278 N.Y. 15, 14 N.E.2d 833 (1938); Broadus v. State, 61 Misc.2d 970, 307 N.Y.S.2d 479 (Ct. of Claims 1970); Todzia v. State, 53 Misc.2d 200, 278 N.Y. S.2d 291 (Ct. of Claims 1967).

It may be that such a limitation on civil rights actions is itself unconstitutional. *Cf.* Testa v. Katt, 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967 (1947); Note, The Collateral Consequences Of Criminal Conviction, 23 Vand.L.Rev. 939, 1184–1218 (1970). A litigant should not, however, be excluded from federal court on the ground that there is an adequate state remedy when obtaining that remedy will require, at the threshold, a constitutional challenge to an integrated state procedural system. A person aggrieved need not pursue such a "will-o'-the-wisp in the state court." Wright v. McMann, 387 F.2d 519, 525–526 (2d Cir. 1967).

█ Punitive damages may be awarded and federal courts have no authority to dismiss federal civil rights cases merely because the damages seem de minimus. *See, e. g.,* Basista v. Weir, 340 F.2d 74, 84–88 (3d Cir. 1965); Marshall v. Sawyer, 301 F.2d 639, 645–647 (9th Cir. 1962); Hague v. Committee For Industrial Organization, 101 F.2d 774, 789–790 (3d Cir.), modified on other grounds, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939); Washington v. Official Court Stenographer, 251 F.Supp. 945, 947 (E.D.Pa.1966); Tracy v. Robbins, 40 F.R.D. 108, 113 (D.S.C.1966), appeal dismissed, 373 F.2d 13 (4th Cir. 1967).

Historically, such constitutional rights as are relied upon by plaintiff were enforced by suits for damages. *See, e. g.,* Wolf v. Colorado, 338 U.S. 25, 29, 69 S.Ct. 1359, 1362, n. 1, 93 L.Ed. 1782 (1949). In recent years our courts have shifted primary reliance from damages to exclusionary rules of evidence to compel compliance by police with constitutional rights. "[E]xperience has taught that it is the only effective deterrent to police misconduct in the criminal context * * *." Terry v. Ohio, 392 U.S. 1, 12, 88 S.Ct. 1868, 1875, 20 L.Ed.2d 889 (1968). *See,* Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). *But cf.* Caldwell and Brodie, Enforcement of the Criminal Civil Rights Statute, 18 U.S.C. Section 242, in Prison Brutality Cases, 52 Geo.L.J. 706, 709 (1964). Considering the wide variety of protections against illegal arrest and detention accorded state prisoners on direct appeal, through collateral attacks in the state and federal courts, and through traditional common law and statutory remedies in the state courts for false arrests and imprisonment, it does not seem amiss to consider some circumscribed protection against abuse of federal civil rights actions designed to protect these same constitutional rights. *Cf.* Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 409 F.2d 718, 724–726 (2d Cir. 1969).

Any limitation generates its own dangers. It must be narrowly construed in the light of the fact that what is involved are claims of violations by officials of some of our most precious constitutional rights—to be free of illegal arrests and imprisonments.

█ Tentatively and diffidently it is suggested that in a case such as the one before us (1) when the facts as determined from an uncontradicted record of a state trial or hearing are clear they may be "presumed to be correct" (*cf.* 28 U.S.C. § 2254(d)), and if (2) there is a claimed violation of constitutional rights by non-violent arrest and a short detention occurring during a regular

**1194**

criminal prosecution, and if (3) there has been no appreciable physical or psychic harm above that to be expected in a legitimate and lawfully conducted prosecution, and if (4) there are no aggravating circumstances such as racial prejudice, or an independent design to deprive the defendant of a constitutional right such as free speech (*cf.* Zwickler v. Koota, 389 U.S. 241, 247–248, 88 S.Ct. 391, 395–396, 19 L.Ed.2d 444 (1967); Long Island Vietnam Moratorium Comm. v. Cahn, 437 F.2d 344, 347 (2d Cir., 1970); Kennedy Park Homes Assoc. et al. v. City of Lackawanna, 436 F.2d 108 (2d Cir., 1970)) or action shocking to the conscience (cf. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952)), a civil rights action may be dismissed at the pleading stage. *Cf.* People of the State of New York v. Horelick, 424 F.2d 697 (2d Cir. 1970); Adickes v. Leary, 436 F.2d 540 (2d Cir., 1971).

In effect such a rule would provide for a circumscribed form of summary judgment (Fed.R.Civ.P. 56) or for a dismissal of the complaint as construed in the light of facts judicially noticed (Fed.R.Civ.P. 12(b) (1) (6)) rather than upon the more dangerous grounds of collateral estoppel or abstention.

▮▮▮ The facts revealed by the full state criminal record show that plaintiff's arrest and detention did not violate his constitutional rights. The probability that a new trial will result in a different factual-legal conclusion is remote to the vanishing point. Plaintiff has asserted no claims to racial discrimination, no claim that the police were motivated by a desire to harass him or deprive him of his First Amendment or other constitutional rights, and no claim that the

police were not attempting to enforce the law in good faith. It is unlike the many cases against prison administrators for acts against inmates which take place after conviction so that there are open questions of fact. Sostre v. Rockefeller, 312 F.Supp. 863 (S.D.N.Y.1970); Jacob and Sharma, Justice After Trial: Prisoners' Need For Legal Services In The Criminal Correctional Process, 18 Kans. L.Rev. 493, 532–534 (1970); Caldwell & Brodie, Enforcement Of the Criminal Civil Rights Statute, 18 U.S.C. Section 242, in Prison Brutality Cases, 52 Geo. L.J. 706 (1964). The violation, if it existed, was no more than a momentary blunder, that resulted in no ascertainable prejudice.

VI.

The petition for habeas corpus is dismissed since it is based upon non-constitutional grounds. There is no reason to grant a certificate of probable cause from the dismissal of the petition. 28 U.S.C. § 2253.

The Court denies plaintiff's motion for appointment of counsel, for an order directing that he be brought from prison to this Court, and for other relief. Plaintiff is granted thirty days to present specific allegations of fact casting doubt on the conclusions reached by the Court. Upon a failure to supply a satisfactory response the civil rights complaint will be dismissed.

So ordered.

\* \* \*

[Plaintiff, in response to the Court's request for more specific allegations, supplied copies of the papers in all the related state proceedings. The Court had already obtained all the information contained in these documents in connection with its own research. Accordingly, the complaint was dismissed.]