OPINION OF THE COURT
Mara T. Thorpe, J.
This proceeding was filed pursuant to section 384-b of the Social Services Law and seeks termination of the parental rights of respondents, the natural father and mother of the child Malik, on the grounds of abandonment and permanent neglect respectively. At the outset, the respondent father, who is currently incarcerated in a Federal prison, moves through his attorney for dismissal of the case against him on the authority of Matter of Sonia V.R. (97 Misc 2d 694), which held that a cause of action predicated upon abandonment under the Social Services Law does not lie against a parent who is incarcerated in a State correctional facility.
An abandonment proceeding under section 384-b of the Social Services Law requires a showing that the respondent is a person whose consent to a child’s adoption would be required by section 111 of the Domestic Relations Law. (Social Services Law, § 384-b, subd 4, par [b].) The court in Matter of Sonia V.R. (supra) reasoned that since section 111 (subd 2, par [d]) of the Domestic Relations Law specifically dispenses with the consent of a parent whose civil *775 rights have been suspended pursuant to the Civil Rights Law, and subdivision 1 of section 79 of the Civil Rights Law suspends the civil rights of a person incarcerated in a State correctional institution, an abandonment cause of action does not lie against a parent incarcerated in such an institution.
The instant proceeding differs from Matter of Sonia V.R. (supra) in that the respondent father is incarcerated in a Federal prison. The issue which must be decided, therefore, is whether a sentence of imprisonment in a Federal prison operates to suspend a parent’s civil rights under this State’s Civil Rights Law and thus eliminates the necessity of his consent to his child’s adoption under section 111 (subd 2, par [d]) of the Domestic Relations Law.
This court has concluded that section 79 of the Civil Rights Law does not operate to suspend such a parent’s civil rights since it expressly applies only to persons incarcerated in State correctional institutions. Therefore, Federal imprisonment does not eliminate the necessity of a parent’s consent to an adoption, a claim of abandonment may properly be asserted against the respondent father herein, and his motion to dismiss must be denied.
Subdivision 1 of section 79 of the Civil Rights Law states in pertinent part: “[A] sentence of imprisonment in a state correctional institution for any term less than for life or a sentence of imprisonment in a state correctional institution for an indeterminate term, having a minimum of one day and a maximum of natural life, forfeits all the public offices, and suspends, during the term of the sentence, all the civil rights, and all private trusts, authority or powers of, or held by, the person sentenced”.[2] This statute is derived from section 510 of the Penal Law of 1909[3] which *776 in turn was derived from section 707 of the former Penal Code.[4] Both of these statutes suspended the civil rights of a person sentenced to imprisonment in a State prison and insofar as relevant here were identical to the current subdivision 1 of section 79 of the Civil Rights Law.
There are two conflicting cases addressing the issue of whether the suspension of a prisoner’s civil rights must be strictly limited to those incarcerated in a State prison or whether such suspension may exist in the case of those imprisoned in a Federal institution. Neither was decided under section 79 of the Civil Rights Law.
In Matter of O’Connor v Cohen (173 Misc 419), the court interpreted the term “State prison” strictly. It held that a four-year sentence to a Federal prison did not work a suspension of civil rights under section 510 of the Penal Law of 1909 inasmuch as the statute expressly related to imprisonment in a State prison. Matter of Anonymous (17 Misc 2d 691, modfg 12 Misc 2d 1073) gave a liberal construction to section 510 of the Penal Law of 1909 and held that it did suspend the civil rights of a parent sentenced to a Federal prison for a crime which would be a felony under New York law, and that therefore that parent’s consent to an adoption was not necessary. In so holding, the court placed great weight on the 1946 Report of the New York Law Revision Commission which states that the probable purpose of the statute was to destroy or suspend civil rights upon sentence for a felony. The holding also followed the lead of Nastasi v State of New York (186 Misc 1051) and Matter of Pallas v Misericordia Hosp. (264 App Div 1, affd 291 NY 692), which applied New York’s civil disability (former Penal Law, § 510) and civil death (former Penal Law, § 511) statutes to persons incarcerated in State prisons in other States.
The case for a strict interpretation of the term “State prison” finds strong support in the Court of Appeals decision in Bowles v Habermann (95 NY 246), an early case which interpreted section 707 of the former Penal Code. There, the plaintiff in a tort action who had obtained a *777 judgment in his favor below was convicted of a felony and sentenced to 10 years’ imprisonment in the Kings County penitentiary while an appeal in the tort action was pending before the Court of Appeals. Relying on section 707 of the Penal Code, the defendant moved that the rights of the plaintiff be declared suspended and the hearing of the appeal therefore be stayed during the period of the plaintiff’s sentence. The Court of Appeals denied the motion holding in part that a sentence to a county penitentiary was not the equivalent of a sentence to a State prison for purposes of section 707 of the Penal Code. The court stated (pp 251-252): “This is a highly penal statute, which imposes forfeitures upon a person thus sentenced and suspends his civil rights; and it should not be extended by implication or construction. It should be enforced just as the legislature has enacted it. It is not provided that a felon’s civil rights shall be suspended on sentence to a county jail or penitentiary; but only in case of a sentence and imprisonment in a State prison *** It may be conceded that there is the same reason for suspending the civil rights of one sentenced for a felony for ten years to a penitentiary as for suspending the civil rights of one sentenced for the same offense, for the same term of imprisonment to a State prison. But the legislature made a general rule, and we cannot apply it to a case not brought within its terms.” (Emphasis added.) This precedent has never been overturned or modified. Its reasoning is as applicable to a case of Federal imprisonment as it is to one of county imprisonment.
Foster v State of New York (205 Misc 736) also applied a strict interpretation of section 510 of the Penal Law of 1909 in the case of a claimant who had been convicted of a felony and committed to the reception center of the New York State Department of Corrections at Elmira Reformatory. Even though the commitment was for the purpose of being classified and certified for transfer to another institution for further confinement, the court held that the commitment did not work a suspension of the prisoner’s civil rights under the statute as long as he was in Elmira Reformatory since that was not a State prison. (Accord Matter of Bilello v Eckert Co., 42 AD2d 243 [prisoner does *778 not lose civil rights until physical transfer from a reformatory to a State prison is accomplished]; Todzia v State of New York, 53 Misc 2d 200 [disability provisions of section 510 of the Penal Law of 1909 were not applicable to a person incarcerated at Elmira Reformatory after conviction of a felony].)
In addition to the decisional precedent, limitation of the civil disability statute to its express language is required by well-established rules of statutory interpretation and construction. There exists no ambiguity in the term “State prison” which permits a construction which includes Federal prisons. “[I]n the construction of statutes, the intent of the framers 'is to be sought first of all, in the words and language employed, and if the words are free from ambiguity and doubt, and express plainly, clearly and distinctly, the sense of the framers *** there is no occasion to resort to other means of interpretation. It is not allowable to interpret what has no need of interpretation, and when the words have a definite and precise meaning, to go elsewhere in search of conjecture in order to * * * extend the meaning’ ” (Meltzer v Koenigsberg, 302 NY 523, 525 [quoting McCluskey v Cromwell, 11 NY 593, 601-602]). This rule prevails even though another construction would render application of the statute more uniform among other classes of cases. (Matter of Burch v Hawkins, 9 AD2d 6; see Bowles v Habermann, 95 NY 246, supra.) Thus, the fact that felons incarcerated in Federal prisons will be treated differently than felons in a State correctional institution is not itself reason to extend the meaning of the term “State prison.”
It is when the language of a statute leaves its intent uncertain that resort to the rules of construction is permissible. (People ex rel. Lehigh & N.Y. R.R. Co. v Sohmer, 217 NY 443.) The meaning of the term “State prison” does become questionable when the issue is whether it applies to prisons operated by States other than New York. Thus, there is no irreconcilable conflict between the cases cited above which applied the civil disability statute to persons incarcerated in the prisons of other States and the conclusion reached herein that it does not apply to those incarcerated in Federal institutions.
*779 Accordingly, the respondent father’s motion to dismiss is hereby denied and the matter is scheduled for further proceedings on October 15, 1980.

. Chapter 687 of the Laws of 1973 substituted the term “correctional institution” for the term “prison” which had existed in the statute since its enactment by chapter 1031 of the Laws of 1965.

. Section 510 of the Penal Law of 1909 provided in pertinent part: “A sentence of imprisonment in a state prison for any term less than for life or a sentence of imprisonment in a state prison for an indeterminate term, having a minimum of one day and a maximum of natural life, forfeits all the public offices, and suspends, during the term of the sentence, all the civil rights, and all private trusts, authority, or powers of, or held by, the person sentenced.”

. Section 707 of the Penal Code (L.1881, ch 676) provided in pertinent part: “A sentence of imprisonment in a state prison for any term less than for life forfeits all the public offices, and suspends, during the term of the sentence, all the civil rights, and all private trusts, authority, or powers of, or held by, the person sentenced.”