OPINION OF THE COURT
Richard D. Huttner, J.
The instant proceeding seeks to terminate the parental rights of the natural father of the children Sonia V. R. born March 10, 1969 and Felicia R. born May 12, 1970, upon the grounds of abandonment (Social Services Law, § 384-b, subd 4, par [b]).
During the course of the hearing a motion to conform the pleadings to the proof was granted and an additional cause of action premised upon permanent neglect (Social Services Law, § 384-b, subd 4, par [d]) was added.
The children’s natural mother, Phyllis R., executed a voluntary surrender instrument for each child on behalf of the Commissioner of Social Services of the City of New York, dated April 28, 1977.
The children’s natural father, Sellas D. R., also known as Salih S. A., A. is currently incarcerated in Auburn penitentiary serving a 25-year-to-life term and has been so incarcerated since January 23, 1973. The children have been in placement since April 12, 1971. Mr. A. resists the petition. The children now reside in a preadoptive home and have resided with the people who wish to adopt them since March 22, 1972. Perforce a psychological parent-child relationship has been spawned.
The children’s father wishes his children to be raised as Muslims, his recently adopted faith. The persons wishing to adopt the children are not of this religious persuasion. According to the agency, adoptive parents of that faith are unavailable to these children.
Since April 12, 1971, when the children were placed, the father visited them but one time, on October 2, 1972. He contacted the agency on four occasions and despite the agency’s diligent efforts to effectuate a visit he failed to keep appointments with the agency on at least three occasions. Except for a card allegedly sent by Mr. A. in 1976, he neither before nor during his confinement in prison wrote or telephoned the children. Neither did he send or make arrangements for the sending of gifts of any kind to them.
*696 The father admitted that he never had any plans to have the children returned to him, but rather hopefully to their mother. The last contact Mr. A. had with the agency and children was in February, 1973, a period in excess of five years!
The legislative intent in enacting section 384-b of the Social Services Law is unmistakable. The statute explicitly states in the very first paragraph:
"1. Statement of legislative findings and intent.
"(a) The legislature hereby finds that:
"(i) it is desirable for the children to grow up with a normal family life in a permanent home and that such circumstance offers the best opportunity for children to develop and thrive;
"(ii) it is generally desirable for the child to remain with or be returned to the natural parent because the child’s need for a normal family life will usually best be met in the natural home, and that parents are entitled to bring up their own children unless the best interests of the child would be thereby endangered * * *
"(iv) when it is clear that the natural parent cannot or will not provide a normal family home for the child and when continued foster care is not an appropriate plan for the child, then a permanent alternative home should be sought for the child”.
It is the intent of the Legislature in enacting this section to provide procedures not only assuring that the rights of the natural parents are protected, but, also, where positive, nurturing parent-child relationships no longer exist, furthering the best interests, needs, and rights of the child by terminating parental rights and freeing the child for adoption.
Section 384-b (subd 4, par [b]) of the Social Services Law permits termination of parental rights based upon abandonment: "(b) [t]he parent or parents, whose consent to the adoption of the child would otherwise be required in accordance with section one hundred eleven of the domestic relations law, abandoned such child for the period of six months immediately prior to the initiation of the proceeding under this section”. (Emphasis added.)
Section 384-b (subd 5, par [a]) defines abandonment.
By statutory definition then, the cause of action upon abandonment is applicable only against parents whose consent is required in accordance with section 111 of the Domestic *697 Relations Law. The father, because of his conviction and sentence of 25 years to life in a State correctional institution has been deprived of his civil rights (Civil Rights Law, § 79, subd 1).
Section 111 (subd 2, par [d]) of the Domestic Relations Law specifically excepts as a requirement for adoption the consent of a parent who has forfeited his civil rights.
The bizarre and certainly unintended result is that despite the abandonment by a felon of his children, redress on behalf of the children on the grounds of abandonment is unavailable to them. The absurd and malefic result is that a convicted felon who has lost his civil rights in effect has greater rights than a law-abiding individual who enjoys his civil rights. Through legislative oversight, children such as these that are the subject of the petition are victimized and parents whose punishment includes the loss of their civil rights are rewarded by their criminal trangressions.
Courts may not legislate and therefore I am constrained reluctantly to dismiss the petitioner’s cause of action premised upon abandonment. This anomaly must be cured by legislation not by judicial intervention.
The petitioner’s cause of action based on permanent neglect as defined in subdivision 7 of section 384-b of the Social Services Law is granted. In pertinent part section 384-b (subd 7, par [a]) of the Social Services Law states: "For the purposes of this section, 'permanently neglected child’ shall mean a child who is in the care of an authorized agency and whose parent or custodian has failed for a period of more than one year following the date such child came into the care of an authorized agency substantially and continuously or repeatedly to maintain contact with or plan for the future of the child, although physically and financially able to do so”.
It is clear from the evidence adduced at the hearing that the respondent substantially, continuously and repeatedly failed to maintain contact or plan for the future of his children for the period April, 1971 to January, 1973. The respondent’s incarceration which began in January, 1973 does not constitute part of the statutory period of one year (Social Services Law, § 384-b, subd 7, par [d], els [ii], [iii]).
While the anomaly aforestated continues to exist, the attention of the Bar is called to section 111 (subd 2, par [d]) of the Domestic Relations Law. Under this section the consent of a natural parent who has been deprived of her civil rights *698 pursuant to the Civil Rights Law is not required. Proceeding under section 111 (subd 2, par [d]) of the Domestic Relations Law, in appropriate cases, can extricate children such as Sonia and Felicia from the state of limbo in which they find themselves prisoners. Utilizing section 111 in cases such as this can assure that the best interests of the children will be protected despite the unavailability of a cause of action premised on abandonment or permanent neglect.
For the foregoing reason, I find that the petition relating to termination of parental rights upon the grounds of permanent neglect and the allegations of the petition under section 614 (subd 1, pars [a], [b], [c], [d]) of the Family Court Act have been proven by a preponderance of the evidence.
A dispositional hearing to determine the best interests of the children will be scheduled by the Clerk of the Family Court, New York County.
The Commissioner of Corrections is directed to produce the respondent on the adjourned date.